(No. 34553.—

ARTHUR L. TILLEY, Appellee, *vs.* HAROLD E. SHIPPEE *et al.,* Appellants.

*Opinion filed January 24, 1958.*

FOLTZ, HAYE & KEEGAN, of Rockford, (FREDERICK H. HAYE, of counsel,) for appellants.

STANLEY H. GUYER, and EDWARD J. ENICHEN, of Rockford, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Winnebago County in favor of the plaintiff, impressing a resulting trust on an undivided one-third interest in real estate, the title to which had been taken in the name of the defendants. A freehold being involved, defendants have appealed directly to this court.

Plaintiff, an automobile dealer, was manager of a used car lot on property owned by the defendant Harold E. Shippee. He learned that the Rockford Auto Auction, owned and operated by Hanley and Dwight Clark, was for sale. The auction was conducted on approximately 8¼ acres of land located in an industrial and commercial area northeast of Rockford and was improved with buildings suitable for auto auctions. Business assets, exclusive of the real estate, consisted of a sign, some fencing and office and shop equipment valued at approximately $3,000.

Tilley and Shippee had, on several occasions, discussed the purchase of other auto sales businesses. About two months prior to May 1, 1955, Tilley, after preliminary negotiations with the Clarks, informed Shippee of the possibility of purchasing the subject property. He was authorized by Shippee to investigate further. While there is some dispute as to facts, it appears that on May 8, 1955, Tilley and Shippee negotiated for the purchase with the

Clarks at the business premises. They agreed upon a price of $60,000, plus $2,500 payable from future auction fees.

On the following day, Tilley and Shippee met with the latter's attorney, Louis Schultz, in the office of Foster Smith, attorney for the Clarks, for the purpose of executing a contract of purchase and sale of the auto auction business. A written agreement was executed by Shippee, Tilley and Hanley S. Clark, the pertinent provisions of which are as follows:

"THIS AGREEMENT, made May 9, 1955, between [*the names of the buyers were omitted*], hereinafter referred to as Buyers, and Hanley S. Clark and Dwight M. Clark and their wives, hereinafter referred to as Sellers, witnesseth: that the Buyers agree to purchase the following described property: [here follows a description of the real estate] and the business commonly known as, Rockford Auto Auction, Route No. 173, Rockford, Illinois, operated by sellers as a partnership. Included in said purchase and sale shall be the items of personal property listed on the inventory attached hereto, and, shall include the exclusive right to use the name Rockford Auto Auction.

"Said purchase and sale shall include all of the buildings on the above described property, except, the smaller frame office building located on the northerly portion of said property, and, shall include all fencing, exterior lighting, and all exterior signs of every type and character.

"The Sellers shall deliver Abstracts of Title evidencing merchantable title in Sellers, and, shall convey all of said realty by good and sufficient Warranty Deed, and, all of said personalty by Bill of Sale, or, such other evidence of ownership as Buyers may require. Further, Sellers, shall give possession of said premises on or before the 15th day of May, 1955, and at the time of full payment. The purchase price for said property, both real and personal, shall be the sum of Sixty Thousand Dollars ($60,000.00) payable on delivery of possession.

"Conveyance shall be to such persons or partnership or corporation as designated by Buyers.

\* \* \* \* \* \* \* \* \* \*

[Signed:]
Harold E. Shippee
Rockford Auto Auction
Hanley S. Clark
Arthur L. Tilley."

There was attached to the agreement a list of shop and office equipment valued at approximately $3,000.

On May 11, 1955, Shippee, Tilley, the Clarks, and their respective attorneys, met at the bank to close the transaction. The Clarks delivered a warranty deed conveying legal title to the real estate to Harold E. Shippee and his wife Amelia R. Shippee as joint tenants. The latter took no part in the transactions and asserts no claim other than as a joint tenant with her husband. The defendants executed and delivered to the bank their promissory note for $30,000, secured by a trust deed on the premises. Thereupon, Tilley paid $10,000 to the Clarks and Shippee paid them $50,000, of which $30,000 came from the money borrowed on the premises.

In the meantime attorney Edward J. Fahy organized the Rockford Auto Auction, Inc., to which corporation Tilley and Shippee transferred the personal property and good will of the auto auction business. Tilley was made president and Shippee vice-president, with Tilley owning one third of the stock and Shippee two thirds. The minutes book of the corporation reflects that Shippee was owner of the real estate. Shippee then leased the real estate to the corporation at a specified rental, the lease granting an option to the corporation to purchase the real estate for $30,000 any time after six months.

The auto auction business conducted by the corporation was not prosperous and it ceased operations in August, 1955. The property was later sub-leased to third parties who also were unsuccessful. On December 19, 1955, the defendants gave notice to the corporation that its lease was cancelled for nonpayment of rent. Upon learning that the defendants intended to assert complete and absolute ownership of the real estate, the only substantial asset remaining, plaintiff filed this action to establish a resulting trust to an undivided one-third interest therein, offering, at the

same time, to assume one third of the obligation under the trust deed and note secured thereby.

The exact nature of the business relationship between Tilley and Shippee for this business venture is in dispute. From Tilley's testimony we gather that it was a joint enterprise, Tilley to advance $10,000, Shippee to advance $20,000, and, by mutual agreement, Shippee was to take title to the real estate in his name individually to facilitate procurement of a loan of $30,000 from the bank to complete the $60,000 purchase price for the auto auction business. He says he insisted that his interest in the premises be protected but acquiesced and agreed to let title be taken in the name of the Shippees upon being assured by Shippee that it was a matter of convenience, and that it was necessary because of Shippee's line of credit at the bank.

Shippee, on the other hand, testified that in the early conversations with Tilley, about May 1, 1955, he had told Tilley that the only way he would be interested in the purchase of the auto auction business was on the basis that he, Shippee, would buy the land individually for $30,000 and later lease the real estate to a corporation which would be formed by Tilley and Shippee. He further stated that the corporation then would purchase the equipment, good will and all personal assets of the auto auction business from the Clarks. Shippee further testified that he and Tilley agreed to organize a corporation with a capitalization of $30,000, $20,000 of the capital stock to be owned by Shippee and $10,000 to be owned by Tilley.

Attorney Schultz testified that the circumstances and details of the transaction were discussed generally between Foster Smith, attorney for the sellers, Tilley, Shippee, and himself, and that it was understood that Shippee was to purchase and receive title to the real estate in Shippee's name individually, and that Shippee and Tilley were to purchase the remaining assets of the auto auction business jointly. Hanley S. Clark, one of the sellers present at this

meeting testified, however, that he could not recall any conversation to the effect that they were selling the land separately to Shippee for $30,000. He further stated, "When we sold the assets of Rockford Auto Auction, we were selling land, buildings and equipment and everything that went with it. It was my understanding we were selling property, equipment and everything that Rockford Auto Auction consisted of to Shippee and Tilley." He further stated that he didn't pay enough attention to hear anybody say anything about breaking down the assets and that he presumed the "thing" was being sold to the two parties concerned. Attorney Smith testified that he did not recall anyone mentioning that the Clarks were selling the land to Shippee for $30,000; that he did not recall there was anything said that would indicate a breakdown of assets between Shippee or Tilley; and further that he did not believe he knew prior to May 11 that the title was to be vested in the Shippees individually.

Trial before the chancellor resulted in a decree in favor of the plaintiff whereby the court held that the defendants held title to the premises in trust in the following proportions: an undivided two-thirds interest in the defendant, Harold E. Shippee, and an undivided one-third interest in the plaintiff; ordering the defendants to make proper conveyance of the premises subject to the mortgage lien; and retaining jurisdiction of the cause for a further accounting between the parties.

Defendant contends: (a) that there can be no resulting trust because the plaintiff neither paid nor became obligated to pay any part of the purchase price for the real estate; (b) that plaintiff's offer to assume his aliquot part of the mortgage obligation did not amount to such payment as would support a resulting trust; (c) that the agreement to purchase executed by the sellers and the plaintiff and defendant did not create an interest in the real estate in the plaintiff; (d) that if a resulting trust were created the

plaintiff was not entitled to a one-third interest thereby; (e) that the evidence did not support either an express or constructive trust; and (f) that the decree is contrary to the evidence. The issue to be decided by this court is whether the facts are sufficient to create a resulting trust in favor of the plaintiff, and, if so, what was the fractional interest thus created.

The law of resulting trusts is well established in Illinois. The rule in substance is that a resulting trust arises by operation of law and is founded on a presumed intent gathered from the acts of the parties. It does not depend upon a contract or agreement and usually comes into being when one person furnishes the consideration, or aliquot part thereof, for the purchase of property while the conveyance is taken in the name of another. *Kane* v. *Johnson,* 397 Ill. 112; *Baughman* v. *Baughman,* 283 Ill. 55; *Reynolds* v. *Sumner,* 126 Ill. 58.

While the testimony is in sharp conflict, there are other circumstances which are decisive. The written memorandum is a silent and potent witness. It lacked the formality of including the names of the purchasers, but was signed by both Tilley and Shippee. It described all of the property being purchased, the land by legal description, and the personal property listed in an inventory attached thereto. The agreement is indicative of the intention of the parties to purchase the entire property together. This is particularly true since it was entered into subsequent to the conversation between Tilley and Shippee, in which the latter contends it was agreed that he was to have title to the real estate individually. The record is devoid of any testimony by Shippee of changes in the arrangement with Tilley after the signing of the agreement.

Under the defendants' theory, Tilley would have been paying $10,000 for an interest in personal property (which under his claim is only one third of a total value of ap-

proximately $3,000, plus an interest in nebulous good will. There is no showing that any part of the $10,000, other than the personal property purchased, found its way into the corporation subsequently organized by the parties, nor does the record disclose any other payment by Shippee into the corporation. The whole amount of Tilley's payment was made to the Clarks as was the $20,000 paid by Shippee from his own funds, together with the proceeds of the real-estate loan. It is apparent that it was the intention of the parties that Tilley participate in the purchase of the real estate.

We are not impressed with defendants' evidence of corporate minutes and transactions whereby the personal property received from the auto auction business was transferred to the corporation, the stock of which was owned two thirds by Shippee and one third by Tilley, and the real estate leased by the corporation from Shippee and wife. These subsequent corporate transactions do not appear to be decisive of the issue of whether or not a resulting trust was created. In the first place, a resulting trust, if any, was established at the instant of conveyance of title, or not at all. (*Kohlhaas* v. *Smith,* 408 Ill. 535, 539; *Van Buskirk* v. *Van Buskirk,* 148 Ill. 9.) Secondly, the trial court, in the exercise of its equitable powers, can penetrate behind the screen of a corporate entity or other forms of business in order to apply the equitable maxim that equity will look through the forms to the substance of a transaction in order to ascertain the relationship of the parties. (*Carrillo* v. *O'Hara,* 400 Ill. 518.) We conclude, therefore, that the evidence is sufficiently clear, strong, unequivocal and unmistakable to meet the requirements for establishing a resulting trust.

We next turn to the question of whether plaintiff is entitled to one third or one sixth of the property. Defendants contend that if a resulting trust was created, plaintiff

would be entitled only to one sixth since he paid only one sixth of the total consideration. This case appears to fall within the holding of *Miller* v. *Miller*, 334 Ill. 183. There the land had been purchased partly from partnership funds in an equal partnership, and title was taken in one of the partners. The party taking title gave a mortgage for the balance of the purchase price. A resulting trust was held to have been thereby created for a full one-half interest. Here, there was a joint enterprise or undertaking which, according to Shippee's own testimony, was to operate the business being purchased either as a partnership or a corporation. Defendants argue that the *Miller case* is not applicable because there a partnership was definitely shown to exist. In this particular transaction the parties were joint adventurers in the acquisition of a business which was being purchased for operation by them. Their decision to form and operate as a corporation rather than a partnership does not change the fact that they were embarking on a joint enterprise, and their mutual duties and obligations were similar to those of partners.

The trust resulted at the instant of transfer of title and Tilley became the equitable owner of one third of the entire property, subject to one third of the mortgage lien which came into being simultaneously with the transfer. Tilley thereby became liable for the payment of one third of the mortgage indebtedness. It was unnecessary for him to later offer to assume his proportionate share of the mortgage burden. His interest in the property was impressed with his share of the mortgage lien at the same instant such interest was created in him.

We find no error in the decree of the trial court and the decree is therefore affirmed.

*Decree affirmed.*