MARTHA E. CAUDILL, Plaintiff-Appellee, *v.* MERVIN L. BEIL, Defendant-Appellant.

Fourth District   No. 4—84—0024

Opinion filed September 14, 1984.—Rehearing denied October 30, 1984.

848

Mervin L. Beil, of Springfield, for appellant, *pro se.*

Samuel C. Patton, of Springfield, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Defendant appeals from an order of the circuit court of Sangamon County entered at the conclusion of a trial at bench. The substance of the order declared the plaintiff to be the legal and equitable owner of two parcels of real estate located in the city of Springfield but subject to resulting trusts in favor of the defendant. The court reduced the resulting trusts to monetary amounts which were ordered paid to the clerk of the circuit court by the plaintiff and held until the judgment order became final. It was further ordered that the defendant vacate the premises and remove his personal belongings therefrom and that thereafter the defendant was permanently enjoined from entering upon the premises.

Upon application by the defendant this court stayed the order and judgment pending appeal.

A summary of the evidence adduced at trial follows. Plaintiff and defendant became acquainted about 30 years ago. In 1975 they met again in Springfield. Defendant was in ill health and plaintiff agreed to care for him. He then moved into plaintiff's rented house in July 1976. Subsequently they agreed to move to a new house. On May 25, 1978, a house at 2100 South Fifth Street in Springfield, one of the parcels of real estate involved in this litigation, was exposed for sale at public auction. Plaintiff bid $50,300 and the house was struck off to her. She signed the purchase contract and made a down payment of $10,000 with her personal check. The transaction was closed about a month later, and the balance was paid by a purchase money mortgage obtained by plaintiff from a Springfield bank. This loan was afterwards renegotiated and reduced through a series of transactions which culminated in a conventional mortgage executed by plaintiff in October 1979. At trial plaintiff admitted that $8,000 of the down payment was provided by defendant. However, the trial court found that all mortgage payments except one made by the defendant had been made by the plaintiff.

Plaintiff and defendant moved into the Fifth Street house and resided there together until May 1983. The trial court found that the relationship was that of "housekeeper/companion" and not one of cohabitation. Therefore, the court concluded that no fiduciary relationship arose between the parties. During the time in which they resided in the house, the parties purchased various items of personal property, including many antiques.

The other parcel of real estate involved here was located at 1113 South Eleventh Street in Springfield. Defendant and Manning Briggs purchased the property at public auction in 1980 for $16,100. Briggs signed the contract and defendant furnished him with one-half the purchase price, or $8,050. Before the closing, plaintiff and defendant conferred and decided to purchase the property themselves. Briggs agreed and returned defendant's $8,050 to him, and it was applied on the purchase price. Plaintiff borrowed a like sum from a local bank and applied it on the purchase price. Title was placed in a land trust with a local bank as trustee, and plaintiff was named as the sole beneficiary.

The genesis of the instant litigation was plaintiff's demand that defendant leave the Fifth Street house. She testified that she did this because defendant was using the house as a law office and had used profane language against her and had threatened to kill her. She

claimed to be the owner of the house, although she admitted, as indicated previously, that defendant had supplied $8,000 towards the down payment. She also admitted that defendant owned some personal property in the house. She further testified that she had worked during the relationship and had earned $16,500 to $18,000 annually, from which the mortgage payments had been made.

Defendant's version of the source of funds for the transactions differed considerably. He claimed that the funds came from a trust which he had created for his children. According to his testimony, he drew the trust instrument himself in 1948 when he was a student in law school. There were no witnesses to the instrument and no original nor a copy were ever produced. He claimed to have made periodic contributions toward the trust over the intervening years until 1972, when he was gravely ill, and then turned the trust assets over to James Griffith.

Griffith testified that he accepted the assets, which consisted of $33,500 in cash and items of valuable coins and jewelry. He also signed an acceptance of trust. According to him, the assets were in an attache case which he kept in the trunk of his car for two months and then in an attic above his garage from 1973 until 1978.

Griffith further testified that he discussed the trust with the plaintiff and the defendant in late 1977 or early 1978. At that time the trust agreement was signed by the plaintiff together with a receipt acknowledging her acceptance of the trust assets. According to his version of the conversation, plaintiff and defendant would purchase a house with the trust assets and the house would be held in trust for the benefit of defendant's children.

Plaintiff denied any knowledge of the existence of the trust and denied any conversations about it. Defendant produced several witnesses as to conversations with plaintiff and defendant concerning the trust. However, it was established that all of these witnesses were clients of the defendant.

In its order the trial court found that no express trust existed. This is the first issue raised by defendant on appeal.

Although defendant could present no written evidence of a trust in favor of his children, a trust in personal property may be established by parol evidence. (*Catherwood v. Morris* (1931), 345 Ill. 617, 178 N.E. 487.) In order to impress a trust upon property by parol evidence, it is essential that the facts be established by clear and convincing proof. (*Knapp v. Hepner* (1957), 11 Ill. 2d 96, 142 N.E.2d 39.) A trial court's finding as to the existence of a trust will not be disturbed on review unless it is against the manifest weight of the evi-

dence. *Price v. State of Illinois* (1979), 79 Ill. App. 3d 143, 398 N.E.2d 365.

Where, as here, a party seeks to introduce secondary evidence of a writing, he must first prove the prior existence of the original, its loss, destruction or unavailability, and his own diligence in attempting to procure the original. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 246 N.E.2d 269.) In an effort to meet these requirements, the defendant produced his own testimony together with that of Griffith, his clients, and his son, Barron Beil. Much of this has been summarized above. Defendant claimed that the trust provided that it should terminate and be distributed when his youngest child attained the age of 25 years. His son, Barron Beil, an attorney from California, testified that he had long understood that he was a beneficiary of a trust but had never seen any trust agreement; that he learned from Griffith of the assets and general nature of the trust. However, he acknowledged that the youngest child was then 27 years old and no distribution of any type had been made.

As has been indicated, the other witnesses were impeached by their relationships with the defendant.

■ In our opinion the trial court's finding that the express trust did not exist was not against the manifest weight of the evidence. A cloud of doubt and suspicion surrounds that "trust." The bizarre method of handling the assets, especially the lack of termination and distribution; the fact that both defendant and his son were attorneys and presumably knowledgeable in the area of trusts and trust administration; all these militate against the existence of any express trust. The trial court observed the witnesses and was the judge of their credibility. We find no basis upon which to alter its judgment.

A more intricate problem is presented by defendant's second issue on appeal, which is that the trial court misapplied the theory of resulting trust to the facts of this case. He does not quarrel with the court's determination that resulting trusts arose in the two parcels of real estate. He argues that the court misapplied the law in determining the nature and extent of his interests. In substance, his argument is that a resulting trust should parallel the amount furnished on the respective down payments; *i.e.*, since he supplied $8,000 of the $10,000 down payment on the Fifth Street house, his resulting trust is 80% of that property; similarly, since he supplied all of the down payment on the Eleventh Street house, his resulting trust there is 100%. We do not agree with these figures, but we also do not agree with the trial court that a resulting trust may be reduced to a cash payment, thus producing the relationship of debtor and creditor.

The basic principles governing resulting trusts are well known. A resulting trust is a remedial device which arises by operation of law from the acts of the parties and is specifically exempt from the operation of the Statute of Frauds. (*Kohlhaas v. Smith* (1951), 408 Ill. 535, 97 N.E.2d 774.) "[W]here two persons together advance the price, and title is taken in the name of one of them, a trust results in favor of the other to such proportion of the property as is equal to the proportion of the consideration contributed by him." (*Clark v. Clark* (1947), 398 Ill. 592, 605-06, 76 N.E.2d 446, 452.) Such trusts arise upon the instant that title is taken, and actions taken subsequent to the taking of title have no bearing on its creation. *Kohlhaas v. Smith* (1951), 408 Ill. 535, 97 N.E.2d 774; *Williams v. Teachers Insurance & Annuity Association* (1973), 15 Ill. App. 3d 542, 304 N.E.2d 656.

Defendant's argument is based upon *Tilley v. Shippee* (1958), 12 Ill. 2d 616, 147 N.E.2d 347. There the supreme court was faced with a plaintiff and defendant who had incorporated themselves and, as joint venturers, purchased business premises for $60,000. Plaintiff paid $10,000 of the original down payment of $30,000. Defendant paid $20,000. Defendant took title and procured a $30,000 loan to pay the remainder of the purchase price. The court held that defendant held title subject to plaintiff's equitable ownership of one-third of the entire property. The court also found plaintiff to be liable for one-third of the $30,000 mortgage lien under a theory of joint enterprise akin to partnership.

Defendant urges that this case stands for the proposition that, when determining the fraction of equitable ownership in property gained through a resulting trust, the fraction of the down payment paid by each party determines their respective interests in the purchased property. However, in the present case the trial court found that no fiduciary relationship existed between these parties. They were not joint venturers or partners. Rather, the court found that plaintiff alone was liable for the loans secured to furnish the remainder of the purchase price. This distinguishes the present case from *Tilley*, where both parties were held liable for the mortgage in the same percentages as their down payments. (The mortgage there did not alter the down payment proportions.)

■ Moreover, as stated in G. Bogert, Trusts & Trustees sec. 456 (2nd ed. 1977), there is no difference in principle between paying money toward the price at the time of the delivery of the deed and giving a note for the sum at that time and paying it later. In both cases the payor has contributed to the payment of the purchase price. The fact that plaintiff's contributions, here, were made through the

use of borrowed money should not diminish their quality. Under this rationale, defendant's proportionate interest in the Fifth Street property would be eight-fiftieths (not eight-tenths) and his interest in the Eleventh Street property would be one-half.

■ It is elementary that a resulting trust is an interest in property, not a debt. While we are sympathetic with the trial court's effort to do fireside equity in a particularly bitter and unseemly piece of litigation, nevertheless the court erred in reducing defendant's share in the properties to a sum of money. Defendant has an interest in the real estate in proportion to his contribution toward the consideration therefor. *Clark v. Clark* (1947), 398 Ill. 592, 76 N.E.2d 446; *Tilley v. Shippee* (1958), 12 Ill. 2d 616, 147 N.E.2d 347; *Latham v. Henderson* (1868), 47 Ill. 185; Restatement (Second) of Trusts sec. 454 (1959).

The court's judgment order must therefore be modified to eliminate the sums of money ordered paid by plaintiff and to award defendant an eight-fiftieths interest in the Fifth Street property and a one-half interest in the Eleventh Street property.

■ As his third issue, defendant claims that the trial court's order allocating personal property in the Fifth Street house is against the manifest weight of the evidence. We do not agree. The trial court found that the defendant had failed in his burden of proof. Beyond identification, he failed to establish ownership of any personalty. Plaintiff asked for an injunction barring defendant from the premises. She also asked that he be required to remove his personal property. In his answer, defendant admitted that plaintiff held legal title but asserted that both the real estate and the personal property therein were held in trust for his children. Ownership of the personal property was therefore raised by the defendant and became his burden of proof. Plaintiff's *prima facie* ownership was shown by title and possession. It was defendant's burden to prove otherwise, and he failed to do so. The trial court committed no error.

■ We turn finally to the matter of the injunction itself. Even though it is many times treated in a cavalier fashion, it still remains an extraordinary remedy, and barring an owner from property in which he has an interest will be done only under extraordinary circumstances. (See, *e.g.*, Ill. Rev. Stat. 1981, ch. 110, par. 11—201(2).) The rule is stated in *McRaven v. Culley* (1927), 324 Ill. 451, 453, 155 N.E. 282, 283, as follows:

> "Equity will interfere to enjoin a trespass only where the complainant has no adequate remedy at law or where it is necessary to prevent a multiplicity of suits by different persons assailing the same right. [Citations.] An exception to the rule

exists where the complainant's title is admitted or has been established in an action at law and repeated trespasses are threatened of such a character that the amounts recoverable as damages in actions at law would be so small and disproportionate to the vexation and expense of the actions as to render the remedy at law inadequate."

As applied to the instant case, this rule justified the trial court in issuing the injunction in the first instance. The plaintiff's title was admitted and finally established by the court's order. However, we have reversed that portion of the order, and it therefore follows that the injunction must be dissolved.

The finding by the trial court that no express trust existed is affirmed; the finding of the existence of resulting trusts is likewise affirmed; the allocation of personal property is affirmed; the reduction of the resulting trust to a money judgment is reversed. The cause is remanded to the circuit court of Sangamon County with directions to modify its order by providing that the defendant has an undivided eight-fiftieths ownership in the Fifth Street property and an undivided one-half ownership in the Eleventh Street property; and to dissolve the permanent injunction.

Affirmed in part, reversed in part, and remanded with directions.

TRAPP and GREEN, JJ., concur.