SHARON LEE LEICHT, Ex'x of the Estate of Walter E. Leicht, Deceased, Petitioner-Appellant, v. JAMES L. QUIRIN, Respondent-Appellee.

Fifth District   No. 5—88—0552

Opinion filed July 30, 1990.

George E. Marifian, of Mathis, Marifian & Richter, Ltd., of Belleville, for appellant.

Robert H. Rice, of Rice Law Offices, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:
This is an appeal from a judgment of the circuit court of St. Clair County which held, *inter alia*, that respondent, James L. Quirin, was the "beneficial owner" of the stock of Trans Truck, Inc. For the reasons which follow, we reverse and remand.

The facts pertinent to this case were addressed briefly in the order issued by this court on February 8, 1990, directing petitioner to show cause why this appeal should not be dismissed for lack of juris-

diction. We subsequently discharged that show cause order, and the appeal is now before us for a decision on the merits. In order to analyze the substantive issues raised by this appeal, we shall now set forth the facts of the case in some detail.

The litigation which gave rise to this appeal commenced when Sharon Lee Leicht, as executor of the estate of Walter E. Leicht, deceased, brought a citation proceeding in the circuit court of St. Clair County pursuant to section 16—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1985, ch. 110½, par. 16—1). The proceeding was initiated in an effort to establish that the stock of a company known as Trans Truck, Inc., belonged entirely to Walter Leicht's estate and not to respondent, James Quirin.

A bench trial was held in the case at which evidence was adduced which established that Trans Truck, Inc., was incorporated in the State of Illinois on June 27, 1978. The company's articles of incorporation indicated that it was organized "[f]or general trucking, hauling, and construction." The articles authorized the issuance of 1,000 shares of common stock. Although there were no actual share certificates, there is no dispute that 100% of that stock was held in the name of the decedent, Walter Leicht. The Federal income tax returns filed by Trans Truck up through the time of the decedent's death consistently showed that the decedent owned 100% of the corporation's stock. Decedent was also listed as owning 100% of the Trans Truck stock in the "Motor Carrier Annual Reports" filed by the corporation with the Illinois Commerce Commission for the two years preceding his death.

The decedent and his father owned a "certificate of public convenience and necessity as a common carrier of property" issued by the Illinois Commerce Commission. On July 18, 1978, the decedent and his father applied to the Illinois Commerce Commission to transfer that certificate to Trans Truck. The application specified that Trans Truck, the transferee, was "wholly owned by the Transferor or members of his immediate family," and the only stockholder listed was decedent, who was represented as owning 100% of the stock. The application for transfer was granted by the Illinois Commerce Commission shortly thereafter.

In the meantime, the decedent and respondent entered into an option agreement on September 7, 1978, under which the respondent was given the right to purchase all of the stock in Trans Truck from the decedent for $4,000. The agreement specified that this right had to be exercised within two years. In addition, a nonrefundable $2,000 payment was required upon execution of the agreement, which would

be applied to the $4,000 purchase price in the event the option was exercised. Respondent made this initial $2,000 payment to the decedent. By the time the agreement expired, however, the decedent had not received the remaining $2,000. After expiration of the agreement the decedent did receive a check for $600 drawn on a Trans Truck account, but there is no dispute that the remaining balance due under the option agreement was never paid.

When the option agreement was executed, a second agreement was entered into between respondent and the decedent. The second agreement recited that the decedent owned all of the shares of Trans Truck stock and specified that the decedent was the president of the corporation, that the decedent's father was its secretary, and that respondent would be elected its vice-president and treasurer. The agreement indicated that respondent would be hired as general manager and operations officer of the company for a salary of $1,000 per month, plus a bonus equal to 90% of the corporation's profit after taxes. The agreement had a two-year term, which coincided with the duration of the option agreement.

This second agreement, which has been referred to as the "employment agreement," also provided that

> "in no way is [the decedent] personally responsible for any of the obligations assumed by the corporation in the employment of James Quirin, nor shall he be personally responsible for any of the corporation debts created as a result of the operation under the management and supervision of James Quirin."

At the same time, the agreement further provided that

> "the control of the corporation shall remain in [the decedent] until such time as James Quirin shall have exercised his option to purchase the stock pursuant to a separate agreement which may have been entered into between the parties."

The purpose of these agreements between the decedent and respondent was to provide a means by which the decedent could transfer his certificate of necessity and convenience to respondent. After the agreements were executed, the decedent did not exercise and evidently did not want to exercise any control over the corporation. The corporation was run exclusively by respondent. The only day-to-day involvement the decedent had with the company was that the company paid him to drive a truck. Moreover, respondent testified that he "provided all the start-up money for this corporation to get it going." How much this was was never established. We do know, however, that with the exception of the certificate of public convenience and necessity, whatever contributions were made to the assets of the cor-

poration to enable it to begin business were made by respondent and not by the decedent.

The option agreement provided that it was "subject to the approval of the Illinois Commerce Commission if the same is deemed to be necessary." On August 17, 1982, respondent applied to the Illinois Commerce Commission for approval of acquisition of control of the company by stock purchase, but that application was denied. As we have previously discussed, respondent never paid the decedent the balance due him under the option agreement, the option was not exercised, and the stock remained in the decedent's name until his death.

Based upon this evidence, the circuit court concluded that although Quirin had had an option to purchase the stock from the decedent, he had not satisfied the conditions of the option and that "the stock therefore remain[ed] vested in [the decedent] at the time of his death." The question of what, if any, further relief should be granted was reserved pending further proceedings.

Thereafter, both Quirin, the respondent, and Sharon Leicht, as executor of the decedent's estate, filed what they denominated as post-trial motions. Sharon Leicht also filed a motion for reconsideration. These motions were argued before a new trial judge, Earle McCaskill, after the original judge in the case, Joseph Cunningham, was assigned to fill a vacancy on our supreme court.

In an order dated August 12, 1988, Judge McCaskill (1) denied Sharon Leicht's motion for reconsideration and her post-trial motion, (2) granted the post-trial motion filed by Quirin, and (3) found that

> "neither the estate of Walter E. Leicht nor Sharon Lee Leicht individually have [sic] any monetary ownership in either the stock of or equity of Trans Truck, Inc.; FURTHER, that because of the representation of ownership of stock by [the decedent], that [the decedent] was the owner of stock in Trans Truck, Inc.; it is the judgment of this Court that such ownership is determined to be special and limited purpose stock, and James L. Quirin is determined to be, and hereby is declared to be the beneficial owner of said stock."

From this judgment, Sharon Leicht, as executor of the estate of Walter E. Leicht, now appeals.

As a preliminary matter, we note that there is no support in the record for Judge McCaskill's conclusion that the stock held by decedent was a "special and limited purpose stock," and respondent makes no attempt to defend the circuit court's judgment under this analysis. Respondent nevertheless contends that the result reached by the circuit court was correct and that its judgment should be affirmed

because the record established that respondent was, in fact, the "beneficial owner" of the stock under either a constructive or a resulting trust.

We agree that the circuit court's reasoning is not dispositive on this appeal. As this court has recently held, a judgment is sustainable on any grounds warranted by the record, regardless of whether the particular reasons or specific findings stated by the trial court are correct. (*People ex rel. Skinner v. FGM, Inc.* (1988), 166 Ill. App. 3d 802, 806, 520 N.E.2d 1024, 1027.) In our view, however, the alternative theories advanced in support of the circuit court's judgment here must fail.

Our supreme court has made clear that some form of wrongdoing is a prerequisite to the imposition of a constructive trust. (*Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193, 533 N.E.2d 901, 905.) Respondent does not claim that the decedent engaged in any wrongdoing in this case. The constructive trust doctrine can therefore have no application.

Respondent's attempt to rely on the doctrine of resulting trust is also without merit. As a general rule, a resulting trust arises by operation of law where one person furnishes the consideration for property and the title is taken in another. (*In re Estate of Habel* (1967), 88 Ill. App. 2d 194, 201, 231 N.E.2d 616, 620.) The theory of a resulting trust is "founded upon a natural equity that one who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee." (*Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 91, 473 N.E.2d 548, 551.) The problem with the application of this doctrine to the stock at issue in the case before us is that respondent cannot be said to have furnished any consideration for the original acquisition of the stock when it was first placed in the decedent's name. As our review of the record has shown, whatever payments or contributions respondent made to this enterprise were made only after Trans Truck had been incorporated and title to the shares had vested in the decedent, and the purpose of those payments or contributions was to (1) facilitate the operation of the business following its incorporation and (2) secure an option so that respondent could buy the shares for himself at a later date. They were not made to fund the initial acquisition of the stock by decedent.

Our supreme court has consistently held that a resulting trust arises at the instant title is taken or vests, or not at all. (*Tilley v. Shippee* (1958), 12 Ill. 2d 616, 623, 147 N.E.2d 347, 352; *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 495, 240 N.E.2d 677, 679; *In re Es-*

*tate of Wilson* (1980), 81 Ill. 2d 349, 355-56, 410 N.E.2d 23, 27.) Because no consideration was furnished or paid by respondent at or before the time the title to the stock vested in the decedent and because the consideration which was subsequently furnished or paid by respondent was not intended to help finance the original transaction by which the decedent acquired the stock in his name, respondent can therefore claim no resulting trust in the shares of Trans Truck stock held by the decedent. (89 C.J.S. *Trusts* §120 at 973-74 (1955).) This is so no matter how substantial the payments made by respondent following the vesting of title to the stock in the decedent's name may have been, for "moneys paid after the passing of title do not have the effect of creating a resulting trust" (*Hille v. Barnes* (1948), 399 Ill. 252, 258, 77 N.E.2d 809, 811), and "[a]cts of the alleged trustee or equitable owner subsequent to the taking of title, have no bearing upon the question of whether a resulting trust was raised" (*Hanley v. Hanley* (1958), 14 Ill. 2d 566, 572, 152 N.E.2d 879, 882).

Respondent has not suggested, and we have not found, any other basis upon which the circuit court's judgment can be sustained. Accordingly, the judgment of the circuit court of St. Clair County is reversed, and this cause is remanded for further proceedings consistent with this order.

Reversed and remanded.

LEWIS, P.J., and WELCH, J., concur.