**In re WANER CORPORATION, Debtor.**

**James L. WANER, Sr., Plaintiff,**

**v.**

**Andrew J. MAXWELL, Defendant.**

**Bankruptcy No. 87 B 15541.**
**Adv. No. 92 A 229.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 23, 1992.

sue here are competing claims to the cash surrender value of a life insurance policy. Cross-motions were filed by the parties for summary judgment. For reasons stated below, the motion of Waner is allowed, that of the Trustee is denied. Ownership of the insurance policy and the right to its cash surrender value is found to lie with Waner.

## UNDISPUTED FACTS

The parties have entered into a joint stipulation and statement of uncontested facts and documents. Based on these submissions and the pleadings, the following facts appear undisputed:

Waner is the former president and principal shareholder of Debtor. Sometime in the 1960's, Waner purchased four whole life insurance policies on his life. Waner's wife and Debtor were each named beneficiaries of two of the policies. Waner owned all four of these policies from the time of purchase until 1986.

On April 11, 1986, Debtor's Board of Directors met and unanimously approved a motion to accept the consolidation of the four whole life policies into one policy with $500,000 in death benefits. The new policy would insure the life of Waner, but only the Debtor would be named as a beneficiary. This motion was considered at Waner's request. His intent in making this transaction was to protect his wife's interest in the stock of the Debtor in the event of his demise by having the insurance death benefits applied to pay Debtor's creditors.

Subsequent to the Board meeting, Waner cancelled the four whole life policies and obtained a single new whole life insurance policy from Jackson National Life Insurance Company (policy no. 7875670) on August 8, 1986. The purchase price of the single premium Jackson National policy was $28,105. Waner used the cash surrender value of the four old policies, plus some of his other funds, to make this purchase. Debtor did not pay any portion of the premium, but it became the policy owner. Debtor has remained as record policy owner of the Jackson National policy from the purchase date to the present time, and own-

E. King Poor, Winston & Strawn, Chicago, Ill., for plaintiff.

Andrew J. Maxwell, Steven S. Potts, Chicago, Ill., for defendant.

## MEMORANDUM OPINION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiff James L. Waner, Sr. ("Waner") filed this Adversary Complaint seeking declaratory and injunctive relief against Andrew Maxwell ("Trustee" or "Defendant"), as Trustee of the bankruptcy estate of Waner Corporation ("Debtor"). This is related to the Debtor's bankruptcy proceeding now pending under Chapter 7 of the Bankruptcy Code. Title 11, U.S.C. At is-

ership of that policy has never been assigned to Waner or anyone else.

The April 11, 1986 resolution of the Board also provided that, in the event that Debtor was ever sold or liquidated, the cash surrender value of the policy would be "gifted" to Waner. The minutes of the meeting record the circumstances of this motion:

A motion was made by Mr. Udziela [vice-president of Debtor] to not only approve this request but due to the fact that Mr. Waner's income has been substantially below industry standards and he has, in fact, considered reducing his income in the event that it be necessary to minimise [sic] overhead costs even further. He requested that the board gift the cash surrender value of the policy to Mr. Waner in the event of a sale of the business or its liquidation.

Joint Rule 12 Statement, Exhibit A. The minutes of this meeting also record Waner's concerns about Debtor's profits and stability. *See Id.,* (Waner reported on the financial condition of Debtor and concluded that "the corporation was not on stable grounds").

Debtor filed its petition for relief under Chapter 7 of the Bankruptcy Code on October 21, 1987. Andrew Maxwell was appointed as Debtor's Chapter 7 Trustee and has administered the estate ever since. On March 9, 1992, the Trustee served Waner's counsel with notice that he intended to cancel the Jackson National policy and collect the cash surrender value for the estate. Waner subsequently filed this Adversary complaint. He seeks a declaration that he is the owner of the policy's cash surrender value and an injunction to prevent the trustee from cancelling the policy.

The Jackson National policy currently has a cash surrender value of about $31,-000.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred to here under Local District Court Rule 2.33. Subject matter jurisdiction lies under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### DISCUSSION

The parties agree and this Court finds that there are no genuine issues of material fact. Therefore, summary judgment is an appropriate vehicle for disposing of this case. Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056). *See also Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Assoc. of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986) (the purpose of Rule 56 is to avoid unnecessary trials when no genuine issues of material fact are in dispute).

### The "Gift" Clause

■ In his Adversary complaint, Waner claims to own the Jackson National policy due to the April 11, 1986 resolution of Debtor's Board of Directors. The relevant clause in the corporate resolution provided that the cash surrender value of the policy was to be "gifted" to Waner in the event of Waner Corporation's liquidation. That clause is evidence of an agreement and intent to transfer the policy to Waner in the event of Debtor's bankruptcy liquidation. However, any such agreement constitutes an attempt to contract around the provisions of the Bankruptcy Code, and is void under 11 U.S.C. § 541(c)(1) which provides in relevant part,

... an interest of the debtor in property becomes property of the estate ... notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before the commencement, and that effects or gives the option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Therefore, Waner cannot be entitled to the cash surrender value as a result of the

agreement approved in the board meeting. *Cf. In re Government Securities Corp.,* 111 B.R. 1007 (S.D.Fla.1990), *aff'd,* 972 F.2d 328 (11th Cir.) (nullifying a provision in an insurance bond which called for its termination in the event that the insured is taken over by a liquidator).

### Waner's Resulting Trust Theory

There is no dispute that Debtor is listed as the owner of the Jackson National policy. However, Waner argues that a resulting trust was created when the policy was purchased in which he held the equitable title and the Trustee held bare legal title.

 In Illinois, a resulting trust arises by operation of law where one person pays or furnishes consideration for property which is conveyed to another. *In re Estate of Wilson,* 81 Ill.2d 349, 355–56, 43 Ill.Dec. 23, 26–27, 410 N.E.2d 23, 26–27 (1980); *Tilley v. Shipper,* 12 Ill.2d 616, 622, 147 N.E.2d 347, 351 (1958); *American National Bank & Trust Co. of Rockford v. United States,* 832 F.2d 1032, 1035 (7th Cir. 1987). Such a trust seeks to carry out the donative intent of the parties that the grantee gain only bare legal title, and that the actual payor gain an ownership interest in the purchased property. *American National Bank,* 832 F.2d at 1035; 35 *Ill.Law & Prac.,* Trusts § 41 (1958). The resulting trust doctrine is founded upon "the natural equity that he who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee." *Bowman v. Pettersen,* 410 Ill. 519, 524, 102 N.E.2d 787, 790 (1951). The party claiming the existence of a resulting trust has the burden of proving its existence by clear and convincing evidence. *Estate of Wilson,* 81 Ill.2d at 356, 43 Ill.Dec. at 27, 410 N.E.2d at 27. However, when the claimant supplied the consideration for the purchase, then he met his *prima facie* burden, and a rebuttable presumption of a resulting trust arises. *Id.; American National Bank,* 832 F.2d at 1036.

 There is no dispute that the party claiming the existence of a resulting trust, Waner, provided all the consideration for the purchase of the Jackson National policy. Moreover, there is no evidence in the record to rebut the stipulated facts in favor of finding a resulting trust. In fact, the Trustee does not even argue against its existence. Therefore, the Court finds, as a matter of law, that a resulting trust arose when Waner purchased the Jackson National policy in the name of the Debtor, a resulting trust under which Waner holds a beneficial ownership interest in that policy.

 As the beneficial owner under a resulting trust, Waner argues under 11 U.S.C. § 541(d) that the policy cannot be part of the estate. Section 541(d) provides,

Property in which the debtor holds, as of the commencement of the case only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

However, § 541(d) does not exclude property from the estate which comes into the estate through the exercise of the Trustee's avoiding powers under 11 U.S.C. §§ 544(a) and 550. *Belisle v. Plunkett,* 877 F.2d 512 (7th Cir.), *cert. denied,* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989). This is because such property comes into the estate through § 541(a)(3), while § 541(d) only excludes property brought into the estate by § 541(a)(1) and (2). Therefore, despite the resulting trust, the policy may become part of the Debtor's estate if the Trustee can prevent or void the transfer from Debtor to Waner by using his "strong-arm" powers under § 544(a).

### Trustee's "Strong-arm" Powers

 Section 544(a) of the Bankruptcy Code provides,

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which the creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a). For a transfer of an interest in Debtor's personal property to be good against the trustee under § 544(a), that transfer must be so far perfected as to be good against a putative unsecured creditor levying on that same property under nonbankruptcy law. Ginsberg, *Bankruptcy: Text, Statutes, Rules,* § 9.01[b] (2nd Ed.1991).

■ The Trustee argues that the Court should allow him to avoid the transfer of the policy from Debtor to Waner pursuant to his rights as a bona fide purchaser under § 544(a)(3). However, there is no question that Debtor's interest in the life insurance policy and its cash surrender value is personal property, *see* 30 *Ill.Law & Prac.,* Property, § 4, and cases cited (defining personal property), and § 544(a)(3) does not grant the Trustee any rights as a bona fide purchaser of Debtor's *personal* property. *In re Marino,* 813 F.2d 1562 (9th Cir.1987); *In re Marceca,* 129 B.R. 371 (Bankr. S.D.N.Y.1991); *In re Cosmopolitan Aviation Corp.,* 34 B.R. 592 (Bankr.E.D.N.Y. 1983); and Ginsberg, *supra,* at § 9.01[b][2]. *See also In re Mill Concepts Corp.,* 123 B.R. 938 (Bankr.D.Mass.1991) (for a thorough discussion of the history and purpose of § 544(a)(3)).

■ This is clear from the plain language and structure of § 544(a). *See* § 544(a)(3) (referring to "a bona fide purchaser of real property"), and *Belisle v. Plunkett,* 877 F.2d at 514–515 ("544(a)(3) compliments §§ 544(a)(1) and (2), which give the trustee the status of a judgment creditor vis-a-vis chattels in the debtor's possession"). Therefore, the Trustee's strong-arm powers as a bona fide purchaser of real property under § 544(a)(3) are of no use to him in this case.

■ Thus, only § 544(a)(1) and (2) are available to the Trustee under his avoidance theory. The issue under those provisions is whether the Trustee as a putative judgment creditor with a perfected judgment lien on a debtor's property has priority over the holder of a beneficial interest of a resulting trust in that debtor's property. In Illinois, a judgment creditor's lien extends only to the actual interest of the judgment debtor in the property. *Echols v. Olsen,* 63 Ill.2d 270, 277, 347 N.E.2d 720, 723 (1976); *Hooper v. Haas,* 332 Ill. 561, 568, 164 N.E. 23, 26 (1928); *East St. Louis Lumber Co. v. Schnipper,* 310 Ill. 150, 156, 141 N.E. 542, 544 (1923). Thus, "a judgment creditor cannot attach his judgment to a 'mere naked legal estate when the entire equitable estate is vested in third person.'" *Echols,* 63 Ill.2d at 278, 347 N.E.2d at 723, *quoting East St. Louis Lumber Co.,* 310 Ill. at 156, 141 N.E. at 544.

■ In *East St. Louis Lumber Co.,* the plaintiff purchased real estate, but ownership was placed in the name of a third person. A judgment was subsequently rendered against that person, and the judgment creditor levied against the property purchased by plaintiff but held in that person's name. The plaintiff then filed suit to require the third person to convey legal title to it and to clear the judgment creditor's lien as a cloud upon its title. The Illinois Supreme Court specifically held that if plaintiff proved that a resulting

trust existed in its favor, then it could take title free and clear of the judgment creditor's lien. *Id.* at 159–60, 141 N.E. at 546.

In this case, there is no question that a resulting trust exists of which Waner is the beneficiary. Therefore, Waner would have priority over subsequent judgment creditors. Again, the Trustee's avoiding powers under § 544(a)(1) and (2) are of no use to him here. He can only take the Debtor's actual interest in the property, and, since that interest consists of nothing more than bare legal title, the Trustee has nothing to take.

The Trustee argues that an exception to this principle exists for bona fide purchasers. If so, this exception is irrelevant here. A judgment creditor is not the same as a bona fide purchaser because a bona fide purchaser is one who takes for valuable consideration without notice of title defect, *Life Savings & Loan Assoc. v. Bryant,* 125 Ill.App.3d 1012, 1019, 81 Ill. Dec. 577, 582, 467 N.E.2d 277, 282 (1984), and a judgment creditor does not acquire his lien for valuable consideration. Trustee contends otherwise, citing *In re Ehrlich,* 59 B.R. 646 (Bankr.N.D.Ill.1986). However *Ehrlich* does not apply to the facts of this case because it discusses the rights of bona fide mortgagees and not judgment creditors.

### Trustee's UCC Argument

The Trustee further argues that § 9–312(5) of the Uniform Commercial Code as adopted in Illinois, Ill.Rev.Stat. ch. 26, § 9–312(5), allows him to avoid Waner's interest in the resulting trust. Section 9–312(5)(b) provides that the first unperfected security interest to attach to property has priority over any other unperfected interest. Resulting trusts arise when legal title is taken. *Zack Co. v. Sims,* 108 Ill.App.3d 16, 26, 63 Ill.Dec. 732, 739, 438 N.E.2d 663, 670 (1982). Thus, to the extent that Waner's resulting trust is in the nature of a security interest, it attached when the policy was purchased in August of 1986—over a year before Debtor's petition was filed and the Trustee's "strong-arm" powers arose. Furthermore, under Illinois law,

unrecorded resulting trusts take priority over subsequent judgment creditors. *East St. Louis Lumber Co.,* 310 Ill. at 156–58, 141 N.E. at 544–45. Therefore, the Trustee cannot avail himself of his putative status as a creditor without notice in order to claim priority over Waner under § 9–312(5).

### CONCLUSION

There are no genuine issues of fact as to Waner's status as beneficial owner of Jackson National life insurance policy no. 7875670 under a resulting trust. Furthermore, there are no genuine issues of fact relating to the Trustee's "strong-arm" powers under 11 U.S.C. § 544(a). As a matter of law, a resulting trust exists in Waner's favor, but the Trustee may not avoid this transfer pursuant to § 544(a). Since the Trustee cannot prevent the transfer of the policy under § 544(a), § 541(d) of the Bankruptcy Code works to exclude the property from the Debtor's estate. Therefore, Waner is entitled to take possession of the policy and has the attendant right to its cash surrender value.

By order entered separately this day, Trustee's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is denied, and James L. Waner's cross-motion for summary judgment is granted. Judgment will be entered in favor of the plaintiff James L. Waner, and plaintiff is directed to submit a draft judgment order granting him declaratory and injunctive relief consistent with this opinion.