Keith **HERNANDEZ**, Plaintiff,

v.

John H. **CHILDERS**, Talent Services, Inc., and Talent Network, Inc., Defendants.

No. 89 C 1418.

United States District Court, N.D. Illinois, E.D.

Nov. 24, 1992.

See also 736 F.Supp. 903.

Terence Edward Flynn, George W. Gessler, Jonathan A. Rothstein, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for plaintiff.

Mitchell Bryan, McConnell & Mendelson, Robert K. Blain, Law Offices of Robert K. Blain, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the motion for summary judgment of defendants John H. Childers ("Childers") and Talent Services, Inc. ("TSI"). For the following reasons, the court denies the motion.

### FACTS [1]

Plaintiff Keith Hernandez ("Hernandez") signed as a professional baseball player for

---

1. The facts are drawn from the statement of material facts each party submitted in accordance with local rules 12(m) and 12(n) as well as the other supporting material submitted. The court notes where the facts are disputed.

the Saint Louis Cardinals in 1976. Childers was both Hernandez's personal friend and sports manager for virtually all of Hernandez's business, tax, financial, and investment matters from 1976 until 1988 and negotiated the initial Cardinals contract for Hernandez. Childers was also the president of TSI which acts as an agent for professional athletes and with which Hernandez also became a client. Both Childers and TSI handled the various aspects of Hernandez's sports career.

The present motion involves a claim for breach of fiduciary duty, common law fraud, and breach of contract against Childers and TSI. Hernandez claims that an investment Childers set up for him as a tax shelter failed miserably. Hernandez claims Childers assured him that the investment was genuinely designed to yield profits, and that if the project succeeded, Hernandez would reap large profits. Also, Childers maintained that Hernandez would receive tremendous tax benefits even if the project failed. Nonetheless, the investment was subject to serious tax risks and failed as both an investment and tax shelter. Moreover, Childers failed to disclose his self-dealing with respect to Hernandez proceeding with the investment, namely his fee or commission from the investment, and both Childers and TSI failed to obtain a review of the investment suitable for Hernandez's financial situation. Specifically, the facts supporting the allegations are as follows.

After the 1979 baseball season, Childers negotiated a five-year, $3.8 million contract for Hernandez in February 1980. Under this contract, Hernandez was to receive a $750,000 signing bonus. But because of the threatened magnitude of federal and state income tax liability, Childers suggested that some form of tax shelter investment for Hernandez would be appropriate. Because of Childers's personal involvement in prior investments, he was aware of a research and development program, which eventually came to be known as Sealock, put together by a local tax attorney, Lloyd Shefsky ("Shefsky"). Accordingly, Child-

ers decided to use Sealock as a means by which Hernandez could defer a large sum of taxes.

Childers next contacted Hernandez's Saint Louis attorney Gerhard Petzall ("Petzall"), and claims to have also contacted Maury Blonder,[2] Hernandez's accountant, to review the Sealock project. Hernandez claims that Childers then told Hernandez that the benefits of the investment would be lost unless Hernandez immediately signed the offering materials. He did so. But because a review of Sealock had not yet been completed, the materials were placed in escrow to await a review. Nonetheless, Childers subsequently proceeded with the transaction by directing Shefsky to take the signed documents and Hernandez's check out of escrow. According to Hernandez, Childers did so without receiving any review. Hernandez further claims Childers assured Hernandez the investment was favorably reviewed.

Hernandez enjoyed a large tax deduction. However, on October 6, 1982, Childers received a letter from the Internal Revenue Service ("IRS") disclosing that the IRS was challenging Hernandez's 1980 tax return and that Sealock was one of the reasons for the challenge. Hernandez claims he never received a copy of this letter, which Childers claims was forwarded to Hernandez. Nonetheless, on November 5, 1982, Hernandez executed a power of attorney authorizing Shefsky to represent him in the tax matter. One of Childers's assistants sent a letter dated August 25, 1983 asking Hernandez to send in a form for a common defense fund in regard to Sealock, with which other investors were apparently having similar difficulties. The IRS subsequently disallowed the tax deduction and Sealock later dissolved with a loss of nearly all of Hernandez's $245,000 investment. Consequently, Hernandez became liable for back taxes and paid the IRS some $800,000 around 1989.

Hernandez filed suit on February 21, 1989 against Childers, TSI, and Talent Network, Inc. alleging breach of fiduciary duty, common law fraud, several Federal

---

**2.** Blonder has since passed away and has never   been deposed on the subject.

Securities violations, negligence, and breach of contract. Upon the defendants' motion, the court dismissed Talent Network, Inc. entirely and dismissed the securities and negligence claims. The court also dismissed the breach of contract claim as to Childers. As a result, the claims presently pending are breach of fiduciary duty against Childers, common law fraud against both Childers and TSI, and breach of contract against TSI. Jurisdiction is based on diversity of citizenship and Illinois law applies.

In their motion for summary judgment, Childers and TSI assert that Hernandez's claims for fraud and breach of fiduciary duty are barred by the applicable five-year statute of limitations. In the alternative, Childers and TSI assert that the evidence establishes Childers did not breach his fiduciary duty, no fraud was committed, and TSI did not breach its contract as a matter of law. The court will address each issue in turn.

## DISCUSSION

■ Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The non-moving party is required to go beyond the pleadings to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). All reasonable inferences are drawn in favor of the party opposing the motion. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). Nonetheless, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and disputed facts are material if they might affect the outcome of the suit, *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992).

■ Initially, the court must address whether Hernandez's breach of fiduciary duty and fraud claims are time-barred. In Illinois, the statute of limitations for fraud and breach of fiduciary duty is five years. Ill.Rev.Stat. ch. 110, ¶ 13–205 (1989); *Luminall Paints, Inc. v. LaSalle Nat'l Bank*, 220 Ill.App.3d 796, 163 Ill.Dec. 240, 244, 581 N.E.2d 191, 195 (1991). The time begins to run once the plaintiff knows or reasonably should have known of his or her injury and that the injury was wrongfully caused. *Superior Bank FSB v. Golding*, 152 Ill.2d 480, 178 Ill.Dec. 720, 605 N.E.2d 514 (1992); *Bashton v. Ritko*, 164 Ill. App.3d 37, 115 Ill.Dec. 296, 299, 517 N.E.2d 707, 710 (1987). The court finds that Hernandez's claims are not time-barred because the uncontroverted evidence does not establish that a reasonable person in Hernandez's circumstances would have been aware of the alleged wrongs before February 21, 1984, but instead establishes that Hernandez could have been aware of a problem at the earliest by March 20, 1984.

■ The evidence does not establish that Hernandez was aware, or through reasonable diligence should have been aware, of the wrongs of which Childers and TSI are allegedly guilty before February 21, 1984. Although Sealock was audited in 1982, and the IRS sent a letter to TSI and Childers regarding the audit, Hernandez claims he never received the letters. He also claims that, once he found out about the audit, at some unknown time, Childers assured him things were allright and that an audit was not unusual. In 1983, Hernandez executed the documents for a common tax defense fund. Nonetheless, Hernandez asserts that Childers did not portray these documents as a defense fund but merely identified them as a vehicle to "strengthen the investment" and that Childers assured Hernandez that nothing was wrong with the investment and that Shefsky would be representing the investment before the IRS. Under these circumstances, a reasonable person would not be put on notice to investigate by the mere knowledge of the audit.

Hernandez further claims that he did not learn of Childers's failure to obtain a legal review until 1986 and he did not know Childers received a commission until his attorney investigated this lawsuit. Hernandez also claims he only learned in 1986 that he faced $800,000 in back taxes, penalties, and interest.

The evidence therefore establishes that it was not until March 20, 1984, when the IRS notified TSI that the deduction was actually disallowed, that Hernandez could be aware he suffered any harm. Although it is unclear when Hernandez learned of the completion of the audit and disallowance of the deduction, March 20, 1984 is the earliest he could have been aware of a breach or injury based on the evidence presented in support and opposition to the motion for summary judgment. Also, Hernandez was not advised until October 1, 1984 to pay his tax liability in order to avoid interest. The lawsuit, filed February 21, 1989, is accordingly within the five-year statute of limitations.

The court now turns to the merits of Hernandez's claims. Under Illinois law, a fiduciary must treat his principal with the utmost candor, rectitude, care, loyalty, and good faith. *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir.1992). Further, a person is liable for fraud where he or she makes a false statement of material fact knowing of the falsity of the statement and with the intent to induce reliance, where the other party justifiably relies upon the statement to his or her detriment. *Craig v. First Am. Capital Resources, Inc.*, 740 F.Supp. 530, 539 (N.D.Ill.1990).

The court finds no need to delineate each specific allegation of fraud or breach of fiduciary duty and the facts supporting or refuting it. But many of the facts on which Childers and TSI rely in claiming that they are not liable as a matter of law are disputed by Hernandez. Thus, summary judgment is inappropriate.

Briefly, Hernandez claims Childers made numerous misrepresentations and material omissions for the purpose of Hernandez's investment and claims Childers concealed his resultant commission. Childers supposedly misrepresented the "speculative project" as a safe financial investment that could produce long term results even though Childers knew it was a risky tax shelter which in no way was designed to yield profit. Childers supposedly told Hernandez that he could reap millions if the venture was successful.

In response to Hernandez's claims that Childers and TSI made misleading representations regarding the soundness of the investment and the review given it by other attorneys, Childers and TSI assert that they did not state any misleading information and claim that the reviews were conducted. As a result, they claim the statements regarding the review were not false and they discharged their duty to provide an independent review of the investment. The information Hernandez recalls Childers providing regarding the soundness of the investment and regarding the chance of success of the investment is in dispute and is such that, if believed, a reasonable jury could return a verdict for Hernandez.

Childers and TSI assert that, at a June 1980 meeting, Hernandez met with Shefsky for two and one-half hours to familiarize himself with the investment and to discuss the risks involved with the investment. Thus, they claim, Hernandez was well informed of the nature of the investment. Nonetheless, Hernandez claims that the meeting was very short, merely for him to be introduced to Shefsky, pointing out that Shefsky's one-page notes from the meeting only evidence brief discussions regarding Sealock, Hernandez's divorce, and the formation of a subchapter "S" corporation for an unrelated matter. Hernandez does not recall ever discussing Sealock or reviewing any written materials on this date, and states that no written materials were available until September 15, 1980 when Hernandez signed the subscription documents for Sealock at Shefsky's office. Further, Hernandez was not highly educated or experienced in investment or tax matters and therefore relied solely on the trust and confidence he placed with Childers.

Also, Childers claims he explained to Hernandez orally and in a letter that he

was to receive a fee for Hernandez's investment in Sealock. Hernandez, on the other hand, claims he did not receive any letter and claims Childers failed to orally disclose his own commission. Hernandez also states Childers failed to inform him that Shefsky as well was to receive a significant portion of the funds from the investment. This may have created a conflict of interest in Shefsky's representation of Hernandez before the IRS which Childers knew about but failed to tell Hernandez about. Not only would this establish Childers failed to inform Hernandez about the possible conflict, it would establish that he actually suggested using Shefsky knowing of the possible conflict.

More importantly, Hernandez maintains Childers failed to obtain a review of Sealock and exceeded the scope of his authority when he commenced the investment by taking the documents out of escrow without receiving an accounting or legal review. Childers claims Blonder reviewed Sealock and that he stated Sealock would achieve the purpose of reducing taxes for Hernandez. Hernandez, on the other hand, claims that Blonder never reviewed or recommended the investment, pointing to the absence a bill or notes from Blonder's office regarding the Sealock review. Further, Hernandez claims Petzall never completed his legal review and never approved the deal, pointing to Petzall's deposition. Petzall states that he made no recommendation of Sealock nor provided any opinion of the "bona fides" of the investment. He says he told Childers that no one at his firm reviewed the investment and that no one at the firm saw any of the documents referred to in the prospectus, thus necessitating abstention from any opinion on Sealock.

Accordingly, in light of the above discussion, summary judgment is not appropriate. Because of the disputed facts, the court is not convinced Childers and TSI are entitled to judgment in their favor as a matter of law.

■ Hernandez's contract claim involves his contract with TSI to receive competent financial advice. TSI agreed to pro-

vide legally qualified personnel to review Sealock. In light of the above discussion, there exists factual dispute as to whether this promise was fulfilled.

In sum, the earliest Hernandez could have become aware of the problem with his investment was March 20, 1984, making his suit filed February 21, 1989 within the five year statute of limitations. Further, Hernandez has shown that there are genuine issues of material fact on whether Childers revealed material elements of the risks and liabilities and other material facts relevant to the security of the project precluding a judgment as a matter of law. Moreover, a dispute over the facts exists regarding Childers's self-dealing and whether he discharged his duty improperly by proceeding with the transaction without a proper review of the research and development project. Last, a dispute over material facts exists in regards to Hernandez's contract claim against TSI.

## CONCLUSION

For reasons stated above, the court denies Childers's and TSI's motion for summary judgment.

IT IS SO ORDERED.