THE PEOPLE *ex rel.* SAMUEL K. SKINNER, Chairman of the Capital Development Board, *et al.*, Plaintiffs-Appellants, v. FGM, INC., *et al.*, Defendants-Appellees.

Fifth District   No. 5—85—0679

Opinion filed February 23, 1988.—Rehearing denied March 22, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellants.

Stephen L. Corn and Kenneth F. Werts, both of Craig & Craig, of Mattoon, for appellee Cox & Hunter Company.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, William F. Kopis, and Clare E. Connor, of counsel), for appellee W. R. Grace & Co.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, David B. McAfee, Michael W. Duffy, and Lisa Marco Kouba, of counsel), for appellee Celotex Corporation.

Donald G. Musick and Warren N. Loan IV, both of Musick & Mitchell, P.C., of Mt. Vernon, for appellees Lipps Construction Co., Fidelity Deposit Company of Maryland, and Eater Sheet Metal Co.

John T. McMullin and Beth A. Kamp, both of Brown, James & Rabbitt, P.C., of St. Louis, Missouri, for appellee FGM, Inc.

JUSTICE CALVO delivered the opinion of the court:

Plaintiffs, the People of the State of Illinois on relation of the Chairman of the Capital Development Board (CDB) and Altamont Community Unit School District No. 10 (Altamont), have perfected this appeal from the dismissal of their causes of action against all defendants on the ground that they were barred by section 13—214 of the Code of Civil Procedure (the Construction Limitations Act) (Ill. Rev. Stat. 1983, ch. 110, par. 13—214). The facts are as follows.

On October 15, 1974, defendant FGM, Inc., a firm of architects and engineers, entered into an agreement with the CDB to plan, design, and supervise the building of an elementary school for Altamont. This agreement was subsequently modified, but these modifications do not affect the issues at hand.

On May 5, 1975, defendant Lipps Construction Company entered into a construction contract with the CDB and secured a performance bond from defendant Fidelity Deposit Company of Maryland. The construction contract provided that Lipps would construct the school in accordance with contract specifications, that it would supervise and coordinate all construction work, that the work would be free of faults and defects, and that it would be responsible for the acts or omissions of its subcontractors. Among others, Lipps subcontracted work on the project to defendant Eater Sheet Metal Company and defendant Cox & Hunter Company.

Section 7—B of the roofing system specifications authorized Lipps

to select defendant Celotex Corporation to manufacture certain "built up" materials (*i.e.*, asphalt, asbestos base sheets, ply felts, emulsion and bitumen) which were to be installed on top of a Zonolite Deck manufactured by defendant W. R. Grace & Company. Together, these components were to comprise the elementary school roof.

Prior to completion and pursuant to specifications established by CDB, Lipps obtained a 10-year "Roof Inspection and Service Contract" from Celotex, with an option to renew for an additional 10 years. This contract, which became effective on May 6, 1976, the date of completion, provided that Celotex would pay the cost of repairing roof leaks attributable to (1) deterioration caused by usual and ordinary effect of wear and weather, (2) errors or mistakes in workmanship in applying roofing materials, (3) blisters, bare spots, buckles, wrinkles and ridges, (4) splits in roofing membrane or base flashing (except as excluded), (5) damage to roofing membrane or base flashing resulting from extreme temperatures, (6) breaks in flashing strips over gravel stop or other metal flanges, and (7) slippage of roofing membrane or base flashing. Among other things, this warranty did not cover (1) structural failures such as settling, shifting, distorting, splitting, cracking of roof decks, walls, girders, foundations, etc., or (2) improper application or failure of any component underlying the roofing membrane or base flashing such as deck, roof insulation, vapor barrier, etc. The contract further provided that CDB or Altamont would promptly notify Celotex of any leaks in the roof. Celotex would then inspect the roof to determine whether or not the cause of the leak was covered by the contract. Although Celotex initially refused to issue the contract, Celotex did so in 1980 after Celotex employees inspected the roof.

Shortly after construction was completed Altamont noticed some water leakage. Each time Altamont noticed a leakage problem, it notified FGM and Celotex. Although leaks persisted between 1976 and 1980, the problem became more frequent and severe in 1980. In 1980, plaintiffs sought repairs from Celotex in accordance with the "Roof Inspection and Service Contract."

From 1980 through 1982, Celotex and FGM attempted to solve the leakage problems with no success. In late 1982 or early 1983, plaintiffs became aware that Celotex believed the roofing problems at the Altamont school were not covered by the contract. Plaintiffs allege that the defects which they subsequently discovered were latent and incapable of being detected by visual inspection. On June 19, 1983, plaintiffs filed a complaint against all defendants which was subsequently amended twice. Plaintiffs' first amended complaint con-

sisted of 12 counts: Respectively, counts I, II and IV alleged that Celotex, FGM, and Lipps breached their contracts with plaintiffs; counts VII and IX alleged that Eater and Cox & Hunter materially breached their contracts with Lipps and that, as a consequence, they were liable to plaintiffs, who were third-party beneficiaries of their contracts with Lipps; counts III, V, VIII and X alleged negligence on the part of FGM, Lipps, Eater and Cox & Hunter; counts XI and XII alleged liability on the part of Celotex and Grace for manufacturing materials which were "unreasonably dangerous to plaintiffs' property when used as directed and for the purposes sold;" and count VI alleged the liability of Fidelity Deposit Company as Lipps' surety.

All defendants filed motions to dismiss the causes of action as to them because the limitation period set forth in the Construction Limitations Act (Ill. Rev. Stat. 1983, ch. 110, par. 13—214) had passed. On September 16, 1985, the court ordered all causes of action dismissed as barred by section 13—214(a). Plaintiffs appeal, alleging that this ruling was in error.

Section 13—214 provides in pertinent part:

> "Construction—Design management and supervision. As used in this Section 'person' means any individual, any business or legal entity, or any body politic.
>
> (a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 2 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." Ill. Rev. Stat. 1983, ch. 110, par. 13—214.

At the outset we note: (1) that section 13—214(a) does not violate the "Special Legislation" provision of the Illinois Constitution (Ill. Const. 1970, art. IV, §13; *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 263, 500 N.E. 2d 34, 38); (2) that section 13—214 applies to the plaintiffs because the statute expressly states that it shall apply to any body politic (see also *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1985), 135 Ill. App. 3d 765, 768, 482 N.E. 2d 155, 157, *rev'd on other grounds* (1986), 114 Ill. 2d 252, 500 N.E. 2d 34); and (3) that a judgment is sustainable on any grounds warranted by the record, regardless of whether the particular reasons or specific findings stated by the trial court are correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E. 2d 9, 12.) We will now

discuss whether plaintiffs' causes of action were properly dismissed.

■ In the instant case Celotex agreed to inspect and service the roof on the Altamont school for 10 years, beginning May 6, 1976. This action was brought in 1983, which is well within the term of the contract between Celotex and plaintiffs. Thus, the trial court erred in dismissing the contract cause of action against Celotex (count I). See *Stelzer v. Matthews Roofing Co.* (1987), 117 Ill. 2d 186, 511 N.E. 2d 421.

■ In *Longust v. Peabody Coal Co.* (1986), 151 Ill. App. 3d 754, 502 N.E.2d 1096, we held that a motion to dismiss should not be employed as a substitute for summary judgment. While it is true that plaintiffs might have discovered possible breaches of contract on the part of FGM, Lipps, Eater, and Cox & Hunter before 1982 if plaintiffs had exercised their rights under the Celotex service contract when the leaks manifested themselves, facts not present in the record may exist which have a direct bearing on when the alleged breaches would have been discovered. Accordingly, the contract causes of action against FGM, Lipps, Eater and Cox & Hunter (counts II, IV, VII and IX) were improperly dismissed.

■ ■ Purely economic losses are generally not recoverable in tort. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E. 2d 443.) In the instant case plaintiffs sought negligence damages from FGM, Lipps, Eater, and Cox & Hunter. Since it was not alleged that anyone had suffered anything other than purely economic loss as a result of the roof leakage, we conclude that the negligence claims against Lipps, Eater, and Cox & Hunter (counts V, VIII and X) must be dismissed because they do not state a recognized cause of action. However, the negligence cause of action against FGM (count III) was improperly dismissed on this basis since to do so (1) would effectively eliminate and stand squarely in conflict with the body of law defining the scope of an architect's liability for professional negligence, and (2) would cast aside, by inference, the previously recognized measure of damages in architectural malpractice cases, which is the cost of repairing the defective structure. See *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 295, 462 N.E.2d 566, 571.

■ Although the Civil Practice Law requires that pleadings be liberally construed with a view to doing justice between the parties (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c)), a trial court can and should require plain, concise and unambiguous pleadings in cases involving multiple causes of action with different limitations periods. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 420-21, 430 N.E.

2d 976, 982-83.) In the present case, plaintiffs alleged in counts XI and XII that Celotex and Grace had manufactured materials which were "unreasonably dangerous to plaintiffs' property when used as directed and for the purposes sold." Since this pleading language fairly may be construed as setting forth both a contract and a tort cause of action (see *Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 558-60, 501 N.E. 2d 376, 382-84 (discussion of differences between claims based upon warranty and strict tort liability theories)), counts XI and XII do not plainly, concisely, and unambiguously set forth separate causes of action against Celotex and Grace. Since plaintiffs were given three separate opportunities to correct this defect after it was made known to plaintiffs by defendants' motions attacking the pleadings (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), the trial court properly could have dismissed counts XI and XII. Accordingly, counts XI and XII were properly dismissed. See *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 421-22, 430 N.E. 2d 976, 983.

Section 1 of "An Act in relation to bonds of contractors entering into contracts for public construction" requires that contractors on public works projects obtain a bond which is deemed to contain the following provision:

> " 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after all final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.' " (Ill. Rev. Stat. 1983, ch. 29, par. 15.)

Fidelity argues that the bond it executed as Lipps' surety was fulfilled when all of the suppliers of labor and material were paid.

■■ Although a surety is not bound beyond the express terms of his undertaking (*Board of Local Improvements, South Palos Township Sanitary District ex rel. North Side Tractors Sales Co. v. St. Paul Fire & Marine Insurance* (1976), 39 Ill. App. 3d 255, 257, 350 N.E.2d 36, 38-39), section 1 binds a surety if the contractor cannot or

does not complete its obligations to the aggrieved party. (See *Board of Education v. Hartford Accident & Indemnity Co.* (1987), 152 Ill. App. 3d 745, 748-49, 504 N.E.2d 1000, 1003; see also *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 263-64, 500 N.E.2d 34, 39.) Since section 1 may bind Fidelity if Lipps is found to have breached its contracts with plaintiffs, and since the action was filed within 10 years of the accrual of the action against Lipps (Ill. Rev. Stat. 1983, ch. 110, par. 13—206; *People ex rel. Skinner*, 114 Ill. 2d at 264, 500 N.E.2d at 39), we conclude that the trial court erred in dismissing plaintiffs' cause of action against Fidelity (count VI).

For the foregoing reasons the judgment of the circuit court dismissing the causes of action contained in counts V, VIII, X, XI and XII is affirmed. However, the judgment must be reversed as to the contract causes of action (counts I, II, IV, VII and IX), the negligence cause of action against FGM (count III), and the cause of action brought against Fidelity as Lipps' surety (count VI). We remand this cause to the circuit court with directions to proceed in accordance with the views expressed herein.

Affirmed in part; reversed in part and remanded with directions.

KARNS and WELCH, JJ., concur.