LUMINALL PAINTS, INC., Plaintiff-Appellant, v. LA SALLE NATIONAL BANK, as Trustee, Defendant-Appellee.

First District (1st Division)   No. 1—90—1516

Opinion filed September 30, 1991.

Cherry & Flynn, of Chicago (Myron M. Cherry and Peter Flynn, of counsel), for appellant.

Gould & Ratner, of Chicago (Robert A. Carson and Karin T. O'Connell, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Luminall Paints, Inc.'s (Luminall's) original complaint was filed on August 7, 1986, against the La Salle National Bank (Bank). After various motions and dismissals, Luminall filed its second-amended complaint alleging breach of contract, fraud and breach of fiduciary duty. The trial court dismissed this complaint pursuant to the Illinois Code of Civil Procedure section 2—619(5) on the grounds that it was barred by the applicable statutes of limitations. (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(5).) Luminall now appeals that order.

Luminall and Bank entered into a lease on September 1, 1964 (Master Lease), covering the premises at 12555 West Higgins Road in Chicago and a one-story building to be erected on those premises (the premises) by Bank. The Master Lease had a 25-year term with two successive options to extend the term for five years each, beginning when Bank completed the one-story building. On November 25, 1966, Luminall and Bank entered into an amendment to the Master Lease (the Amendment). The Amendment extended the lease term to March 31, 1994, with options for two additional five-year terms. The Amendment also changed the base rent.

On April 1, 1974, Luminall and Bank entered into a letter agreement to terminate the Master Lease and the Amendment (the Termination Agreement). Under the Termination Agreement, Luminall agreed to complete at its expense certain cleanup of the premises in preparation of a new tenant, including removing the equipment, acid etching and refinishing the existing floor slab and removing paint debris from the walls and ceiling of the "paint making area" and removing tanks, piping, motor control center and acid etching and resealing the floor of the "tank room" (the work) prior to May 10, 1974. Luminall also agreed to execute a promissory note for $14,039.20 in favor of Bank and pay certain percentages of the real estate taxes for

1973, 1978 and 1979. In return, Bank agreed that during the period beginning April 1, 1974, through March 31, 1994, Bank or its successors or assigns would pay Luminall an amount equal to 35% of all rentals actually received by Bank from any lessee of the premises in excess of the respective amount of rent which would have been payable under the provisions of the Master Lease.

At approximately the same time the Termination Agreement was executed, Bank leased the premises to Chemtron (New Lease). Luminall was headquartered in Los Angeles County, California, without direct access to the premises. Bank did not readily inform Luminall that its work under the Termination Agreement had been unsatisfactory nor did it inform Luminall of the amounts of rent Chemtron was required to pay under the New Lease. Bank was entitled to retain Luminall's 35% of the excess rent for some time after the New Lease commenced due to certain expense setoffs.

On August 7, 1986, Luminall filed its original complaint against Bank in chancery court seeking a declaratory judgment and an accounting. That complaint was dismissed on April 25, 1987, for want of prosecution. Upon Luminall's motion, the order dismissing the complaint for want of prosecution was vacated on May 10, 1988. The trial court transferred the case to the law division.

Bank, on November 10, 1988, moved to strike and dismiss the first-amended complaint and further moved for sanctions. The motions were set for December 28, 1988. On December 27, 1988, Luminall filed its second-amended complaint without leave of court. On December 28, 1988, a briefing schedule was set for Bank's motions and the hearing was continued until March 23, 1989.

On March 23, 1989, the trial court granted Bank's motion to dismiss the first-amended complaint and gave Luminall leave to file a second-amended complaint by April 20, 1989. Luminall eventually filed another second-amended complaint on May 3, 1989, alleging breach of contract, fraud and breach of fiduciary duty. Again, Bank moved to dismiss the second-amended complaint on the ground that it was barred by the applicable statutes of limitations.

On July 28, 1989, the parties agreed that Luminall would file its response to Bank's motion to dismiss by August 11, 1989, and that the motion would be heard on September 21, 1989. Luminall failed to file a response and also failed to appear for argument on the motion to dismiss. The trial court ordered that written response to the motion be barred and set the hearing for November 8, 1989. By agreement of the parties, the hearing was continued to February 1, 1990, and then again until April 18, 1990. Luminall failed to appear for the

hearing on April 18, 1990, due to an office docketing error. After a hearing on the merits, the trial judge granted Bank's motion and dismissed the complaint with prejudice. Luminall then filed a motion for reconsideration which was denied. Luminall now appeals the April 18 order dismissing the complaint.

The second-amended complaint contains three counts against Bank for breach of contract, fraud and breach of fiduciary duty in connection with the Termination Agreement. The second-amended complaint alleges that about September 22, 1976, Bank initially informed Luminall that its work to the premises under the Termination Agreement was unsatisfactory. Luminall states that it was unable to inspect the premises to verify this or to ascertain the extent of the problem or to take any corrective action to cure the alleged defective work or to take appropriate legal action against the salvager hired to perform the work. Chemtron, as evidenced in Mr. Kostak's affidavit, claimed it had expended $15,129 to rectify the unsatisfactory work.

Luminall also alleged that Bank failed to timely notify it of the amounts of the 1978 and 1979 real estate taxes even though Bank paid these taxes and did not request reimbursement from Luminall. Luminall alleged that Bank's actions indicated that either Luminall's share of the excess rents was sufficient to cover the tax amounts or that Bank's actions were a deliberate attempt to deprive Luminall of its rights under the Termination Agreement. Luminall further alleged that it requested Bank in January 1981 to send it all leases for the premises along with an accounting of the rents paid on the premises. Bank, however, stated that it was ignoring Luminall's request.

Luminall claims Bank did not inform it until August 1982 that Bank was claiming that an aggregate $144,399 was owed to Bank by Luminall which included $15,129 for rectifying the work, $3,436 for maintenance and $61,974 for Luminall's share of the 1978 and 1979 real estate taxes. Thereafter, Bank agreed to provide Luminall with a full accounting, supported by documents of the amounts Luminall allegedly owed to Bank. Bank continued to refuse to pay Luminall any portion of the excess rents or to provide Luminall copies of any of the leases on the premises.

More specifically, in its breach of contract count Luminall alleges that Bank breached the Termination Agreement in the following manner by failing to (1) provide Luminall with copies of all the leases on the premises, (2) pay Luminall 35% of excess rents received for the premises beginning April 1, 1974, (3) provide Luminall with a proper accounting of rents collected and amounts due to Luminall's setoffs and expenses, (4) timely notify Luminall of the real estate taxes due

on the premises, (5) timely notify Luminall of alleged defects in the work in order to allow Luminall an opportunity to cure, and (6) by knowingly and systematically withholding information from Luminall and preventing Luminall's performance under the Termination Agreement.

In Luminall's breach of fiduciary duty count, it alleges that (1) in its capacity as agent for Luminall, Bank deliberately and fraudulently deprived Luminall of 35% of the excess rents on the premises, (2) after Luminall vacated the premises and had no means to determine the condition of the premises, Bank was aware of the condition and knew Luminall was relying upon communications from Bank in connection with its rights under the Termination Agreement, (3) Bank failed to timely notify Luminall of alleged defects in the work, of the real estate taxes for 1978 and 1979 and failed to provide an accounting and leases on the premises, (4) Bank acted with the intent that Luminall rely to its detriment on Bank's omission, (5) Luminall justifiably relied to its detriment on Bank's omission, and (6) as a direct consequence, Luminall was prevented from inspecting the premises, verifying the existence and extent of the alleged defects and from attempting to cure the defects and was further damaged.

The fraud count in the second-amended complaint alleges that (1) Bank concealed and omitted the items in the first and second count, (2) Luminall justifiably relied to its detriment, and (3) as a direct and proximate result of Bank's conduct, Luminall was damaged.

The inquiry on appeal from an order granting a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure is limited to accepting as true all well-pled facts and reasonable inferences that can be drawn therefrom and to examining whether a cause of action was stated. (*Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 445 N.E.2d 1184.) Conclusions of law, however, are not admitted. *Outlaw v. O'Leary* (1987), 161 Ill. App. 3d 218, 220, 514 N.E.2d 208, 210.

■ The Termination Agreement is a written contract. Under the Illinois Code of Civil Procedure section 13—206, Luminall could commence a suit for breach of contract any time "within 10 years next after the cause of action accrued." (Ill. Rev. Stat. 1987, ch. 110, par. 13—206.) Bank correctly states that a cause of action accrues when facts exist which authorize one party to maintain an action against another. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 762, 455 N.E.2d 246, 251.) Moreover, a cause of action accrues when a suit first may be maintained thereon, and a plaintiff cannot delay running of the statute of

limitations by postponing the time of demand upon the proper party. *Brehm v. Sargent & Lundy* (1978), 66 Ill. App. 3d 472, 475, 384 N.E.2d 55, 57.

Under the Termination Agreement, the excess rent Luminall was to receive from Bank was to be set off by expenses as indicated in Mr. Kostak's affidavit and the amount due on Luminall's portion of the 1978 and 1979 real estate taxes which Bank never required Luminall pay; therefore, Luminall was not expecting to receive any money under the excess rent provision until 1981. In Illinois, 1979 taxes became due and payable in 1980; therefore, it would not have been apparent to Luminall that Bank was in violation of the Termination Agreement until 1981. Since Luminall's original complaint was filed in August 1986, it was filed well within the statutory period.

■ Luminall relies on the well-established rule that "where an obligation is payable by installments, the statute of limitations runs against each installment from the time it becomes due, that is, from the time when an action might be brought to recover it." (*Brehm*, 66 Ill. App. 3d at 474, 384 N.E.2d at 56; *Light v. Light* (1957), 12 Ill. 2d 502, 147 N.E.2d 34.) Bank's obligation to pay Luminall excess rents from the premises does not end until March 1994. Bank admitted that it received rents under the subsequent leases at specified times throughout each year. Since rents become due at specified intervals, Bank's obligation to Luminall is payable by installments. (See *Brehm*, 66 Ill. App. 3d at 474, 384 N.E.2d at 56.) Thus, under the above rule each time Bank receives excess rent from a lessee of the premises and fails to pay Luminall its share of those rents, Luminall may bring an action for breach of contract. Luminall is barred from recovering for breaches occurring before August 7, 1976, because the statute of limitations has run on those breaches, but Luminall has timely filed its complaint for breaches occurring after August 7, 1976. We find that the trial court erred in dismissing Luminall's breach of contract on the ground that the statute of limitations had run.

■ Bank's argument that Luminall's cause of action accrued in 1974 because Bank failed to provide Luminall with copies of the leases on the premises in 1974 is incorrect. Luminall did not request copies of the leases until 1981 because it was unnecessary since Luminall was aware that Bank had leased the premises to Chemtron until at least 1979. Furthermore, Luminall was not expecting to receive any excess rents until after 1981 because it agreed to pay real estate taxes and other costs out of the excess rents. In addition, Bank argues that the contract was repudiated and that to allow Luminall to proceed on its breach of contract claim would force Bank to look back

to 1974 for its defenses. In effect, Bank is also arguing *laches*. *Laches* does not affect when the statute of limitations *accrued*, but rather, is an affirmative defense which is a bar to a cause of action, not simply by reason of the passage of time, but in addition, by reason of a substantial detriment to a defendant's position resulting from the passage of time. (*Martin v. Soucie* (1982), 109 Ill. App. 3d 731, 736, 441 N.E.2d 131, 134.) This affirmative defense was not pled and, therefore, is not before this court.

■ In Illinois the statute of limitations for breach of fiduciary duty is five years. (Ill. Rev. Stat. 1987, ch. 110, par. 13–205.) Bank focuses on two specific breaches of its fiduciary duty to Luminall. First, Bank argues that since it failed to notify Luminall of its unsatisfactory work in 1974, it breached its fiduciary duty to Luminall in 1974. Entertaining this logic, Bank asserts that Luminall had until 1979 in which to bring a fiduciary duty cause of action against it. Luminall did not file its original complaint until August 1986; therefore, according to Bank, the statute of limitations has run on the breach of fiduciary duty count.

Second, Bank claims that since Luminall requested an accounting in January 1981 and Bank did not provide Luminall with an accounting as requested, the statute of limitations on its fiduciary duty to Luminall began to run in January 1981. Since Luminall did not file its original complaint until August 7, 1986, the statute has run.

■ Both of Bank's theories fail. Bank omits significant facts. Bank ignored rather than refused Luminall's January 1981 request for an accounting. Thereafter, Luminall again requested Bank provide it with an accounting. In August 1982, Bank responded to Luminall's request by asserting that Luminall owed Bank money. After Luminall complained that the August 1982 accounting was an incomplete and highly informal accounting, Bank agreed to provide Luminall with a full accounting supported by documentation. Finally, in January 1984, Bank began to produce documents to support its accounting. After six months of producing documents and completing the accounting, Bank refused to pay Luminall any part of the excess rents. Under these alleged circumstances, Luminall did not discover Bank's breach of fiduciary duty until after the accounting was completed and Bank, ultimately, refused to pay Luminall any of the excess rents. Furthermore, if Luminall was not informed of its unsatisfactory work and Bank's failure to notify Luminall of it until the completed accounting, then Luminall had no reason to bring a breach of fiduciary suit against Bank. Therefore, Luminall filed its cause of action for breach of fidu-

ciary duty well within the five-year statute of limitations, and thus, this count was improperly dismissed.

■ The trial court also dismissed Luminall's fraud count. In order to withstand Bank's motion to dismiss as to the fraud count, the facts pled and the reasonable inferences drawn therefrom must indicate that Luminall was unaware of the fraud and used due diligence in attempting to uncover the fraud. (*Suslick v. Rothschild Securities Corp.* (7th Cir. 1984), 741 F.2d 1000.) We have already found that under the Termination Agreement, the excess rent Luminall was to receive from Bank was to be set off by expenses such as a portion of the 1978 and 1979 real estate taxes. Since in Illinois, 1979 taxes became due and payable in 1980, Luminall would not have been aware of the fraud until 1981. Luminall did request an accounting in January 1981. Thus, Luminall was using due diligence in attempting to discover why Bank was not paying excess rents to it. After Bank had ignored this request, Luminall submitted another request for an accounting. Finally, in August 1982, Bank responded to Luminall's request by asserting that Luminall owed Bank money. Thereafter, Luminall complained that the August 1982 accounting was incomplete and Bank agreed to provide Luminall with a full accounting, which was completed in July 1984. Accepting as true all well-pled facts and reasonable inferences which can be drawn therefrom, we find that Luminall used due diligence in attempting to discover the alleged fraud and that Luminall was fully aware of the alleged fraud in July 1984 after the full accounting and Bank's refusal to pay Luminall any part of the excess rents. Luminall filed its original complaint in August 1986, which was within the five-year statute of limitations. We find that the trial court erred in dismissing Luminall's fraud count.

■ Bank argues that Luminall should be precluded from bringing this appeal because it failed to file a written response to the motion to dismiss and failed to appear and give oral argument on the motion. The trial court dismissed the second-amended complaint on the merits pursuant to section 2—619 of the Illinois Code of Civil Procedure, not as a sanction for missing court dates and failing to file a response. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) "Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion, or a withdrawal of the opposition thereto, but shall be deemed to be a waiver of the right to file the respective memorandum." (Cook County Cir. Ct. R. 2.1(d).) Thus, Luminall's failure to file a response to the motion to dismiss is not a waiver of its opposition to the motion. Due to an office docketing error, Luminall was not represented at the oral arguments on the motion. Since the trial court ruled

on the motion solely on the statute of limitations ground, this court can consider the statute of limitations argument. When reviewing a motion to dismiss pursuant to the Code of Civil Procedure section 2—619, this court accepts as true all well-pled facts and reasonable inferences that can be drawn therefrom. *Moreno*, 112 Ill. App. 3d 670, 445 N.E.2d 1184.

█ Bank contends that Luminall has waived all of its arguments by failing to make them in the trial court proceeding. However, as noted above, Bank's motion is not facially sufficient to overcome the second-amended complaint. Luminall does not need to present new matter previously not in the record or to present additional facts on appeal. Ill. Rev. Stat. 1983, ch. 110, par. 2—619.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and remanded for further proceedings.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.