HI–LITE PRODUCTS COMPANY,
Plaintiff–Appellant,

v.

AMERICAN HOME PRODUCTS
CORPORATION, Defendant–
Appellee.

No. 92–2720.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1993.

Decided Dec. 16, 1993.

William J. Harte, Charles A. Boyle (argued), Mary C. Sweeney, James Rosen, Chicago, IL, for Hi-Lite Products Co.

Donald E. Egan (argued), Raymond E. Stachnik, Marcy K. Weaver, Katten, Muchin & Zavis, Chicago, IL, for American Home Products Corp.

Before EASTERBROOK and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

MANION, Circuit Judge.

Hi-Lite Products Company ("Hi-Lite") sued American Home Products Corporation ("American Home") for breach of contract,

tortious interference with contract, tortious interference with business relations, and breach of duty of good faith and fair dealing. The district court dismissed the breach of duty of good faith and fair dealing claim without objection. The district court also granted defendant's 12(b)(6) motion dismissing the first three claims with prejudice, after finding that the claims were barred by the statute of limitations. Plaintiff appeals the dismissal of counts one through three. We reverse.

## I. Factual Allegations

These allegations are taken from the plaintiff's complaint and must be assumed true for purposes of a 12(b)(6) motion. *Ross v. Creighton Univ.,* 957 F.2d 410, 411 (7th Cir. 1992). Defendant, American Home, through its division of Boyle–Midway Food Products ("Boyle–Midway"), manufactures Black Flag Wasp Killer ("Black Flag") aerosol spray. Plaintiff, Hi–Lite, is a distributor of various products to the telecommunication's market. In April of 1977 Hi–Lite entered into a contract with Boyle–Midway to distribute Black Flag to the telecommunication market in the United States. Apparently there is a high demand for wasp killer in the telecommunication market because telecommunication companies provide their servicemen with wasp killer to protect them from insects during field calls. Because of the sensitivity of the telecommunication equipment, however, telecommunications companies will only purchase wasp killers which have been approved by their laboratories as both effective and safe for the equipment. Accordingly, after Hi–Lite decided to become a primary supplier to the telecommunication markets, it undertook an extensive developmental program to modify the standard Black Flag so that it would conform to the stringent telecommunication requirements. Hi–Lite's developmental program succeeded; by replacing the standard actuator on Black Flag, Hi–Lite increased the accuracy of the directional spray and obtained approval of modified Black Flag both from GTE and Bell Laboratories.

From 1977 through 1983, GTE purchased modified Black Flag from Hi–Lite. Beginning in 1978, Hi–Lite also began an extensive marketing effort to sell modified Black Flag directly to the Bell Telephone System. In August of 1985 Hi–Lite successfully contracted with Ameritech, one of the Bell companies, to supply it modified Black Flag. In September of that same year, Hi–Lite also quoted a price for modified Black Flag to another Bell company, Bell South. Hi–Lite, however, did not get the contract with Bell South allegedly because Boyle–Midway had directly quoted Bell South a lower price, in violation of its exclusive distributorship agreement with Hi–Lite. Hi–Lite discovered this alleged breach in October of 1985. Also in October of 1985, Boyle–Midway allegedly breached its 1977 contract with Hi–Lite by imposing unduly harsh and restrictive credit terms, in violation of its customary practice. In May of 1986 Hi–Lite discovered that Boyle–Midway had again allegedly breached its 1977 contract by quoting Black Flag directly to Bell Atlantic. Further alleged breaches occurred starting in July of 1986 when Boyle–Midway signaled its sales force to sell Black Flag directly to Bell South, and when it actually shipped Black Flag directly to Bell South. In October 1986 Bell South canceled its orders with Hi–Lite for modified Black Flag dating back to April 28, 1986. Allegedly this was a direct result of Boyle–Midway's actions.

Boyle–Midway was unable to maintain good customer relations with Bell South and in February of 1987 Boyle–Midway informed Hi–Lite that it lost the Bell South account. Realizing that it was better to take a cut of the profits than to lose all sales to the telecommunication market, Boyle–Midway sought to reconcile with Hi–Lite. Accordingly on February 18, 1987, Boyle–Midway met with Hi–Lite representatives to discuss its distribution agreement. At the meeting Boyle–Midway apologized for its past actions toward Hi–Lite in violation of the distributorship agreement. Boyle–Midway then made the following offers and representations which Hi–Lite accepted:

(1) Boyle–Midway would provide Hi–Lite with reasonable credit terms and a line of credit sufficient to carry an inventory allocation of 1,000 cases of product;

(2) Boyle–Midway would inform its manufacturing facilities that they would adapt Black Flag to Hi–Lite's specifications;

(3) Boyle–Midway would not promote any direct sales contacts with any telecommunications account;

(4) Boyle–Midway would refer all Black Flag sales inquiries and business to Hi–Lite from the telecommunications industry;

(5) Boyle–Midway would direct a memo to all Boyle–Midway field personnel detailing and instructing them in accord with above; and

(6) Hi–Lite would be Boyle–Midway's exclusive representative to the telecommunications market.

On February 27, 1987 Hi–Lite sent a letter to Boyle–Midway confirming the agreement reached during the February 18, 1987 meeting. Boyle–Midway sent a letter on March 18, 1987 agreeing to Hi–Lite's confirmation letter.

Notwithstanding Boyle–Midway's conciliatory efforts, it soon returned to its old ways. In May of 1987 it informed Hi–Lite that it would not provide the credit terms negotiated at the February 18 meeting. Boyle–Midway also failed to ship Black Flag to Hi–Lite, in violation of its agreement. In June of 1987 Boyle–Midway resumed selling wasp killer directly to Bell South, also in violation of the distributorship agreement. Between July 1987 and March 1988, Boyle–Midway made various promises to appease Hi–Lite and to continue their relationship, including a promise to deliver Black Flag to Ameritech and Bell South while paying Hi–Lite "the difference between the selling price and Boyle–Midway's cost plus profit." Boyle–Midway, however, failed to fulfill these promises. Then in September of 1988 Boyle–Midway terminated sales to the telecommunication industry; but it also increased its price to Hi–Lite, thereby eliminating Hi–Lite's ability to compete in the telecommunications market.

On December 30, 1991 Hi–Lite filed a four-count complaint against American Home, alleging: (1) breach of contract; (2) interference with contract; (3) interference with prospective advantage; and, (4) breach of covenant of good faith and fair dealing. The district court dismissed count four without objection. The district court also dismissed the first three counts under 12(b)(6), finding that these claims were barred by the five-year statute of limitations which applied. The court determined that American Home's breach of the 1977 contract came to Hi–Lite's attention in October of 1985, and that a second breach came to Hi–Lite's attention in May of 1986. The court reasoned that because these two breaches occurred more than five years prior to the filing of the complaint on December 30, 1991, Hi–Lite's breach of contract claim was time-barred. Similarly, the court ruled that the claims for tortious interference with contract and interference with prospective advantage were also barred because the tortious acts arose out of the same circumstances as the plaintiff's breach of contract and thus occurred or were discovered at the same time. After dismissal of its complaint, Hi–Lite moved for leave to file an amended complaint, which the court denied.

## II. Analysis

■■■ This court reviews de novo a district court's order granting a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Pearman v. Norfolk & Western Ry. Co.,* 939 F.2d 521, 522 (7th Cir.1991). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). See also *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985) ("[D]ismissal under Rule 12(b)(6) is proper only if the allegations of the complaint make clear that the plaintiff cannot state a claim...."). In determining whether the plaintiff can state a claim, the truth of all pleaded factual allegations is assumed and all reasonable inferences are made in the favor of the plaintiff. *Ross,* 957 F.2d at 411. Moreover, "we have made it clear on more than one occasion that a plaintiff is 'free on ... appeal to give us an unsubstantiated version of the events,' provided it is consistent with the complaint, to show that the complaint should not have

been dismissed." *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992), citing *Orthmann*, 757 F.2d at 915.

Hi–Lite filed its complaint on December 30, 1991. The parties agree that a five year statute of limitation period applied for all claims. Ill.Rev.Stat., ch. 110, sec. 13–205 (1991). *See, e.g., Best Coin–Op v. Paul F. ILG Supply Co.*, 189 Ill.App.3d 638, 136 Ill. Dec. 957, 969, 545 N.E.2d 481, 493 (1989) (applying a five-year limitation period for tortious interference with contract). Accordingly, with the issue of equitable estoppel aside, the statute of limitations would bar any claim which accrued before December 30, 1986. On appeal, Hi–Lite asserts that the district court erred in holding that its claims were barred by the statute of limitations because it had alleged breaches of contract which occurred after December 30, 1986. In making this argument, Hi–Lite also claims that, in addition to the original 1977 oral contract, it entered into a new contract with Boyle–Midway on February 18, 1987. Because this new contract came into existence after December 30, 1986, and within five years of the filing of the complaint, Hi–Lite asserts that breaches of this contract are not barred by the statute of limitations. Hi–Lite further claims that the district court erred in holding that Boyle–Midway was not equitably estopped from asserting the statute of limitations as a defense to claims accruing before December 30, 1986. Finally, Hi–Lite asserts that the district court erred in dismissing the tortious interference counts, claiming that the discovery rule applied and thus presented a *jury* question.

*A. Breach of Contract*

In determining whether Hi–Lite's contract claim is barred by the statute of limitations, we shall consider three separate time frames in which the alleged breaches could have occurred: (1) breaches which occurred before December 30, 1986; (2) breaches which occurred between December 30, 1986 and February 17, 1987; and (3) breaches which occurred after February 17, 1987. Whether the breaches occurring within each time frame are barred by the statute of limitations presents three distinct issues. The first time frame presents the question of whether Hi–Lite may sue on breaches of the 1977 contract which occurred more than five years before the filing of the complaint. The second time frame presents the issue of whether Hi–Lite may sue for breaches of the 1977 contract which occurred within five years of the filing of the complaint. The third time frame presents the issue of whether Hi–Lite may sue for breaches of a new contract which occurred within five years of the filing of the complaint. Resolution of the first and third issues is straight-forward. The second issue, however, presents a more complicated analysis and is thus discussed last.

*1. Pre–December 30, 1986 breaches.*

■ Hi–Lite alleged that Boyle–Midway breached the 1977 contract in several separate instances before December 30, 1986. For example, Hi–Lite alleged that in October 1985 Boyle–Midway directly quoted Bell South a price for Black Flag. Hi–Lite also claimed that in October of 1985, Boyle–Midway imposed unduly harsh and restrictive credit limits on Hi–Lite, contrary to Boyle–Midway's customary credit policies. Hi–Lite further alleged that in May of 1986 it discovered that Boyle–Midway breached the distributorship agreement when it directly quoted Bell Atlantic for the sale of Black Flag. Hi–Lite also alleged that in July of 1986 Boyle–Midway breached its distribution agreement when it signaled its sales force to sell Black Flag directly to Bell South and when it actually shipped Black Flag directly to Bell South. Hi–Lite further alleged that in October of 1986, Bell South canceled all of Hi–Lite's orders as a direct result of Boyle–Midway's breach of its distribution agreement with Hi–Lite. These breaches occurred more than five years before the filing of Hi–Lite's complaint and are, therefore, barred by the statute of limitations.

■ Hi–Lite argues that because Boyle–Midway made numerous promises to refrain from future misconduct, it is equitably estopped from asserting the statute of limitations as a defense to the pre-December 30, 1986 breaches. Hi–Lite alleged that Boyle–Midway made these promises between July 1987 and March 1988. But Hi–Lite further

alleged that in September of 1988 Boyle–Midway terminated sales to the telecommunications industry and increased its price to Hi–Lite in order to eliminate Hi–Lite's ability to compete in the telecommunication's market. Accordingly, by September of 1988, Hi–Lite knew or should have known that Boyle–Midway would not live up to its promises. The statute of limitations would not have run on any of the pre-December 30, 1986 breaches until, at the earliest, October of 1990—five years after Boyle–Midway's first alleged breach. Thus, Hi–Lite had from September of 1988 until October of 1990 to file suit. "[A] defendant is not estopped to raise a limitations point because of any alleged 'lulling' of the plaintiff into inaction until after the limitation period where the 'lulling' period, if there was any, expired months before the statute barred the action and where there was ample time and opportunity for the plaintiff to avail of any legal rights he has." *Reat v. Illinois Central R.R. Co.*, 47 Ill.App.2d 267, 197 N.E.2d 860, 865 (1964); *see Salloum Foods & Liquor v. Parliament Ins. Co.*, 69 Ill.App.3d 422, 26 Ill. Dec. 399, 405, 388 N.E.2d 23, 29 (1979). Hi–Lite had more than ample time and opportunity to file suit against Boyle–Midway within the limitations period—it had a full two years after the alleged "lulling" ended. Accordingly, we hold that the doctrine of equitable estoppel does not preclude the statute of limitations from barring any pre-December 30, 1986 claims.

### 2. Post–February 17, 1987.

■ On appeal, Hi–Lite further asserts that it entered into a new contract with Boyle–Midway during the February 18, 1987 meeting and that Boyle–Midway breached this contract within the limitations period. For example, Hi–Lite alleged that Boyle–Midway breached this contract in May of 1987 when it reneged on its promise to provide credit to Hi–Lite. Hi–Lite alleged an additional breach in June of 1987, when Boyle–Midway resumed selling Black Flag directly to Bell South in violation of its distributorship agreement. Additionally, Hi–Lite claimed that Boyle–Midway breached its contract when it ceased approving shipments to Hi–Lite. Hi–Lite claimed another breach when Hi–Lite failed to ship Black Flag directly to Ameritech and Bell South and to pay Hi–Lite "the difference between the selling price and Boyle–Midway's cost plus profits," as it had promised. Finally, Boyle–Midway increased its selling price to Hi–Lite, thereby eliminating Hi–Lite's ability to compete in the telecommunications market. These breaches were all alleged to have occurred after the creation of a new contract on February 18, 1987 and within the limitations period. A plaintiff may recover for breaches of a separate contract even if recovery on an earlier contract is barred by the statute of limitations. *See Pratl v. Hawthorn–Mellody Farms Dairy, Inc.*, 53 Ill.App.3d 344, 11 Ill.Dec. 216, 219, 368 N.E.2d 767, 770 (1977).

■ Boyle–Midway does not dispute that the statute of limitations would not bar recovery for claims based on a new February 18, 1987 contract. Rather, Boyle–Midway argues that because Hi–Lite did not allege in its complaint the creation of an oral contract at the February 18, 1987 meeting, it may not recover on this basis. In its complaint, however, Hi–Lite specifically alleged that at the February 18, 1987 meeting Boyle–Midway made certain offers and that it accepted these offers, including among other things, Boyle–Midway's offer for Hi–Lite to be its exclusive distributor. Missing from the complaint is a specific allegation that a second contract was entered into on February 18, 1987. The existence of a second February 18, 1987 contract, "may be somewhat unclear and unspecific but it satisfies the perhaps too modest burdens that the Federal Rules of Civil Procedure place on the pleader. The function of the complaint under the federal rules is to notify the defendant of the plaintiff's claim rather than to detail the evidence which if true would show that the plaintiff ought to win his case." *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir.1985). Hi–Lite's allegations concerning the February 18, 1987 meeting and the offers and acceptance made at this meeting sufficiently notified Boyle–Midway of its theory of recovery. Accordingly, it is irrelevant that Hi–Lite did not specifically state in its complaint that a separate oral contract came into existence on February 18, 1987.

In response, Boyle–Midway argues that it did not enter into a second contract with Hi–Lite during the February 18, 1987 meeting; rather, Boyle–Midway claims that the meeting was nothing more than preliminary negotiations or an agreement to agree and, at most, the only relationship flowing from that meeting was a nonexclusive buy/sell relationship. In support of its position, Boyle–Midway points to the letters which allegedly confirmed the contract and notes that the writings did not set forth all of the terms allegedly agreed upon and also did converge on the terms discussed. It may be entirely true that a new contract did not arise from the February 1987 meeting, but Hi–Lite alleges to the contrary and for purposes of a 12(b)(6) dismissal, we must assume Hi–Lite's allegations as true. *Ross v. Creighton University,* 957 F.2d 410, 411 (7th Cir.1992). Accordingly, the district court erred in holding that the statute of limitations barred recovery for Hi–Lite's claims based on breaches of the February 18, 1987 contract.

*3. December 30, 1986—February 17, 1987.*

This leaves us with the question of whether it was also improper to dismiss claims based on breaches occurring before the alleged new contract was created. First, it is necessary to note that Hi–Lite's complaint is ambivalent and may or may not include claims for breaches occurring after December 30, 1986, but before it entered into a new contract with Boyle–Midway on February 18, 1987. For example, Hi–Lite alleged that after May 1986 "Boyle–Midway, in derogation of its distribution agreement with Hi–Lite and promises to Hi–Lite began to sell Black Flag directly to Bell Atlantic without honoring the distribution agreement with Hi–Lite." Hi–Lite further alleged that after July 1986, "Boyle–Midway shipped Black Flag direct to Bell South in violation of its distribution agreement." It is unclear whether Boyle–Midway sold or shipped Black Flag to Bell South between December 30, 1986 and February 17, 1987 and, therefore, it is unclear whether Hi–Lite is attempting to recover for breaches within this time frame.

To the extent that Hi–Lite seeks recovery for breaches occurring during this window, it is seeking recovery for a breach of the 1977 contract, because the alleged new contract did not come into existence until February 18, 1987. But, as discussed above, the 1977 contract was already breached in October of 1985 and May of 1986. These breaches occurred more than five years before the filing of the complaint and were barred by the statute of limitations. The question then becomes whether the October 1985 and May 1986 breaches caused the statute of limitations to run for all breaches of the 1977 contract, or whether a separate accrual date exists for each breach. This question is important not only in determining whether breaches occurring during the December 30, 1986 to February 17, 1987 window are barred by the statute of limitations; it also becomes relevant if Hi–Lite is unable to prove that a new contract came into existence on February 18, 1987 because all breaches would then be based on the 1977 contract.

■■■ The district court originally concluded that the October 1985 and May 1986 breaches caused the statute of limitations to run for all of Boyle–Midway's future breaches. In reaching this conclusion, however, the district court erred because it failed to consider the nature of the contract and the nature of the breaches. "There are contracts ... that have been said to require continuing (or continuous) performance for some specified period of time, a period that may be definite or indefinite when the contract is made." 4 Corbin on Contracts § 956 at 841 (1951). *See e.g. Luminall Paints v. LaSalle Nat. Bank,* 220 Ill.App.3d 796, 163 Ill.Dec. 240, 243–44, 581 N.E.2d 191, 194–95 (1991); *People ex rel. Skinner v. FGM, Inc.,* 166 Ill.App.3d 802, 117 Ill.Dec. 673, 676–77, 520 N.E.2d 1024, 1027–28 (1988); *Thread and Gage Co. Inc. v. Kucinski,* 116 Ill.App.3d 178, 71 Ill.Dec. 925, 929–30, 451 N.E.2d 1292, 1296–97 (1983). Contracts requiring continuous performance are capable of being partially breached on numerous occasions. Corbin at 841. *See e.g. Luminall Paints,* 163 Ill. Dec. at 243–44, 581 N.E.2d at 194–95; *Thread and Gage,* 71 Ill.Dec. at 929–30, 451 N.E.2d at 1296–97. Each partial breach is actionable and is subject to its own accrual

date and own limitation period. Corbin at 841. *See e.g. Luminall Paints,* 163 Ill.Dec. at 244, 581 N.E.2d at 195; *Thread and Gage,* 71 Ill.Dec. at 929, 451 N.E.2d at 1296–97. Accordingly, because each breach of a continuous duty has its own accrual date, a plaintiff may sue on any breach which occurred within the limitation's period, even if earlier breaches occurred outside the limitation period. Corbin at 841. *See e.g. Luminall Paints,* 163 Ill.Dec. at 243–44, 581 N.E.2d at 194–95; *Skinner v. FGM, Inc.,* 117 Ill.Dec. at 676–77, 520 N.E.2d at 1027–28; *Thread and Gage,* 71 Ill.Dec. at 929–30, 451 N.E.2d at 1296–97.

 "A continuous contract, [however,] is capable not only of a series of partial breaches but also a single total breach by repudiation or a material failure of performance." *Segall v. Hurwitz,* 114 Wis.2d 471, 339 N.W.2d 333, 342–43 (1983); Corbin at 841. If a single breach occurs, either by repudiation or material failure of performance, the claim accrues at that time and the statute of limitations begins to run for all claims on that contract. Corbin at 841. Thus, the accrual date for a continuing contract potentially accrues either on the date of the first breach, if that breach is total, or on the many different dates of the separate breaches.

*Segall v. Hurwitz,* 339 N.W.2d 333, illustrates the potential accrual dates for continuing contracts. In *Segall,* the plaintiff alleged that the defendant violated its covenant not to compete from August 31, 1972 through August 31, 1977. The trial court found that the plaintiff knew of instances where the defendant had breached the contract in early 1973. The plaintiff did not file a complaint until May 23, 1979. The trial court held that the breach of contract claims were barred because the plaintiff learned of the violations more than six years before the action was commenced. *Id.* 339 N.W.2d at 342. The appellate court reversed, finding that a covenant not to compete imposes a continuing duty upon the defendant. The court, citing Corbin, reasoned that when a continuing duty exists, a new claim generally accrues for each separate breach. Accordingly, the court found that the plaintiff may be able to

recover for breaches of the continuous duty not to compete which occurred within the limitations period. The court, however, noted that it could not determine from the record whether the breach in early 1973 was a total breach of the continuous duty, such that the breach of contract claim accrued for all claims on the same contract. Accordingly, the court reversed the trial court's summary judgment based on the statute of limitations.

 In its brief, Boyle–Midway acknowledges that dismissal would have been inappropriate if it owed Hi–Lite a continuing duty because each subsequent breach would have constituted a separate actionable wrong. Boyle–Midway, however, argues that dismissal was appropriate because Hi–Lite failed to allege that the contract was continuous. But "[t]he plaintiff['s] claims must survive a 12(b)(6) dismissal if 'relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). Accordingly, it is irrelevant that Hi–Lite did not allege that the 1977 contract was continuous.

We point out that Hi–Lite may not be alleging any breaches within the December 30, 1986 to February 17, 1987 window. If on remand, however, Hi–Lite alleges that breaches occurred during this time frame, or if Hi–Lite is unable to prove the existence of a new contract (which would cause all breaches to be based on the 1977 contract), the district court will be forced to determine whether the duties allegedly breached were continuous duties. If the court finds that the duties were not continuous, the first breach would start the running of the statute of limitations for all breaches of the 1977 contract. However, if the district court finds that the contract was continuous, the court must further determine whether a single total breach by repudiation or material failure of performance occurred. If the court finds that a total breach occurred, the statute of limitations began running at the time of the total breach for all actions based on the 1977 contract. Conversely, if a total breach did not occur, each breach will have a separate accrual date and those alleged to have oc-

curred after December 30, 1986 will be actionable.

### B. Tortious Interference with Contract and Prospective Advantage

■ The district court also erred in finding that Hi–Lite's tortious interference with contract and tortious interference with prospective advantage claims were barred by the statute of limitations. The court ruled that these claims were barred because the tortious acts arose out of the same circumstances as the plaintiff's breach of contract and thus occurred or were discovered at the same time. But as discussed at length above, Hi–Lite alleged numerous breaches which occurred after December 30, 1986. Accordingly, the statute of limitations may not bar recovery for the tortious interference claims.[1] Just as it was error for the district court to conclude that one breach of contract necessarily began the statute running for all future breaches, it was error to conclude that because one tort action is barred by the statute of limitations, all other tort actions are similarly barred. *See e.g., Oberman v. Dun & Bradstreet, Inc.*, 586 F.2d 1173, 1175 (7th Cir.1978) (each republication of a libel constitutes a separate cause of action which starts the statute of limitations running anew).

■ We do note, however, that if Boyle–Midway's tortious conduct interfered with Hi–Lite's contracts or prospective advantages before December 30, 1986, the statute of limitations would bar recovery for claims based on these interferences. *Howard T. Fisher & Assoc., Inc. v. Shinner Realty Co.*, 24 Ill.App.2d 216, 164 N.E.2d 266, 272 (1960). This is true even if Boyle–Midway's tortious conduct continued after December 30, 1986. *Id.* "It is a contradiction in terms to say that there can be a continuous procuring of a breach of a contract after

the breach has actually occurred." *Id.* Rather, a tortious interference with contract claim accrues when the contract is breached.[2] *Id.* Similarly, a tortious interference with prospective advantage accrues when the prospective advantage is interfered with. Accordingly, Hi–Lite may not recover for Boyle–Midway's interference with contracts or prospective advantages which occurred before December 30, 1986.[3] For example, Hi–Lite cannot recover for Boyle–Midway's tortious interference with contract which allegedly caused Bell South to cancel its orders in October of 1986 because Bell South's breach occurred before December 30, 1986. This is not to say that Hi–Lite could not recover for any tortious conduct of Boyle–Midway which caused Bell South to breach other contracts after December 30, 1986.

Hi–Lite may be seeking recovery for such post-December 30, 1986 third party breaches caused by Boyle–Midway's alleged tortious conduct. Hi–Lite alleged that it had valid enforceable contracts with Bell South and Ameritech which were terminated because of Boyle–Midway's wrongful conduct. Hi–Lite, however, failed to specify whether Bell South and Ameritech terminated the contracts after December 30, 1986. Similarly, Hi–Lite alleged that it had a valid business expectancy of selling Black Flag to Bell South, Ameritech and the entire Bell Telecommunications system. Again it is unclear from the complaint whether this expectancy existed after December 30, 1986. Boyle–Midway would surely argue that no such expectancy could exist after the October 1985 and May 1986 breaches of the exclusivity agreement. But as in the case of the breach of contract, a new expectancy could have resulted from the alleged February 18, 1987 contract and thus within the statutory period.

■ We must make all reasonable inferences in favor of Hi–Lite. *Ross v. Creighton Univ.*, 957 F.2d 410, 411 (7th Cir.1992). It is reasonable to infer from Hi–Lite's com-

---

1. We are in no way ruling on whether Boyle–Midway's actions constituted tortious interference with contract or prospective advantage. Dismissal on this basis may be appropriate, but is not before us.

2. If the contract interfered with is a continuing contract, it is possible for a defendant to cause that contract to be breached on more than one

occasion. In this situation, a tortious interference claim accrues with each separate breach.

3. The discussion *supra* p. 1406 concerning the doctrine of equitable estoppel applies equally to these claims and, therefore, Boyle–Midway is not barred from asserting a statute of limitations defense.

plaint that Boyle–Midway caused third party breaches and otherwise interfered with Hi–Lite's prospective business advantage after December 30, 1986. We are thus faced with potential tortious interference claims which occurred within the limitations period. We have made it clear that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). Accordingly, a 12(b)(6) dismissal of all tortious interference claims on the basis of the statute of limitations was inappropriate.

One final point in regard to the tortious interference claims: On appeal, Hi–Lite argues that reversal is necessary because the discovery rule applies and this presents a jury question. Conversely, Boyle–Midway asserts that these claims constitute torts arising out of contracts which accrue at the time of the breach of contract. This dispute centers around the continued validity of the following language in the Illinois Supreme Court decision in *West Am. Ins. Co. v. Sal. E. Lobianco & Son Co.*, 69 Ill.2d 126, 12 Ill.Dec. 893, 370 N.E.2d 804 (1977): "We recognize a difference in the statute of limitations where the tort arises out of a contractual relationship. There it commences at the time of the breach of duty, not when the damage is sustained." *Id.* 12 Ill.Dec. at 896, 370 N.E.2d at 807. Boyle–Midway asserts that this language is mere dicta which is not meaningful after the Supreme Court broadly applied the discovery rule in *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 58 Ill.Dec. 725, 728–29, 430 N.E.2d 976, 979–80 (1981). *Commonwealth Edison Co. v. Encompas, Inc.*, 158 Ill.App.3d 852, 110 Ill.Dec. 811, 814–15, 511 N.E.2d 988, 991–92 (1987), supports Boyle–Midway's position. In *Commonwealth Edison*, an Illinois appellate court concluded that *Knox College* conflicted with *West American* and, therefore, a tort arising out of a contract does not necessarily accrue at the time of the breach of contract; rather accrual is governed by the discovery rule. We need not resolve this dispute, however, because as discussed above the district court erred in dismissing Hi–Lite's second and third counts on the basis of the statute of limitations

because viewing the complaint in the light most favorable to Hi–Lite, interferences with contract and prospective advantage occurred after December 30, 1986. Moreover, it does not appear that Hi–Lite is alleging that any breach occurred before December 30, 1986 which was not discovered until after December 30, 1986.

*C. Leave to File an Amended Complaint*

Hi–Lite also appeals the district court's denial of its motion for leave to file an amended complaint. We will reverse a district court's denial of such a motion only if the district court has abused its discretion. *Hartz v. Friedman*, 919 F.2d 469, 474 (7th Cir.1990). While the district court would likely find it advantageous to allow Hi–Lite to amend its complaint so as to clearly set forth the February 18, 1987 independent contract and respective post-limitation breaches of this contract, as well as post-limitation tortious interference claims, we do not hold that the district court abused its discretion in denying Hi–Lite's motion.

### III. Conclusion

For the above reasons, we reverse the district court's dismissal of counts one, two and three and remand for consideration consistent with our opinion.